UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JENIFER DUPRES, WILLIAM SOTO,
DOMINGO TOLENTINO, and LUIS VIRUET,
individually and on behalf of all persons similarly
situated,

Plaintiffs,

-against-

HOUSLANGER & ASSOCIATES, PLLC,
TODD HOUSLANGER, and BRYAN BRYKS,

Defendants.

---

No. 19 Civ. 6691 (LDH) (SJB)


**Oral Argument Requested**


**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**


NEW YORK LEGAL ASSISTANCE GROUP
7 Hanover Square
New York, NY 10004
Telephone: (212) 613-5000


*Attorneys for Plaintiffs*


Date of Service: January 23, 2020

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

PROCEDURAL HISTORY .................................................................................... 3

BACKGROUND .................................................................................................. 4

    A.    Defendants' Business ......................................................................... 4

    B.    Plaintiffs' Execution Claims Allege Execution Without Sufficient Review or Notice................................................................................................ 5

    C.    Defendants' Unlawful Opposition to Class Members' Efforts to Stop the Executions.......................................................................................... 6

        1.    Defendant's Uniform Practices in Filing Oppositions............................ 6

        2.    Defendants' Uniform Practices in Prolonging Legal Proceedings ............ 9

    D.    Harm to Plaintiffs and the Class .......................................................... 11

ARGUMENT ................................................................................................... 12

   I.    The Proposed Class Meets the Requirements of Rule 23(a)............................ 13

    A.    The Proposed Class is Sufficiently Numerous ........................................ 13

    B.    There are Common Questions of Law and Fact ....................................... 14

    C.    The Named Plaintiffs' Claims Are Typical of Those of the Class Members............. 17

    D.    Named Plaintiffs are Adequate Representatives. ..................................... 18

  II.    The Proposed Class Meets the Requirements of Rule 23(b) ........................... 18

    A.    The Proposed Class Seeking Injunctive Relief Meets the Requirements of Rule 23(b)(2) .......................................................................................... 18

    B.    The Proposed Class Seeking Monetary Relief Meets the Requirements of Rule 23(b)(3) .......................................................................................... 19

        1.    Common Questions Predominate ....................................................... 19

        2.    Class Action is a Superior Method of Adjudication ................................ 21

        3.    The Proposed Class is Ascertainable ................................................... 21

        4.    NYLAG Satisfies the Rule 23(g) Prerequisites for Appointment as Class Counsel ....................................................................................... 22

 III.    Class Certification is Appropriate Now ...................................................... 23

CONCLUSION ................................................................................................. 24

# TABLE OF AUTHORITES

## CASES

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997)...................................................................... 14

*AMF Bowling Sec. Litig.*, No. 99 Civ. 3023, 2002 WL 461513 (S.D.N.Y. Mar. 26, 2002)........ 24

*Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128 (2d Cir. 2017)...................... 12

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52 (2d Cir. 2000).......................... 18

*Baker v. G. C. Servs. Corp.*, 677 F.2d 775 (9th Cir. 1982)............................................................. 21

*Burkett v. Houslanger & Associates et al.*, No. 19 Civ. 2285 (LDH) (JO) .......................... passim

*Caridad v. Metro–N. Commuter R.R.*, 191 F.3d 283 (2d Cir. 1999) ............................................ 17

*China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018)............................................................. 13, 24

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ........................................................................... 13

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ....................................... 13

*D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451  (E.D.N.Y. 1996)....................................... 20

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008).............................................. 18

*Gorss Motels, Inc. v. Cetis, Inc.*, No. 3:16  Civ. 1368(RNC), 2017 WL 4856866 (D. Conn. Feb. 20, 2017). ......................................................................................................................... 24

*In re AMF Bowling Sec. Litig.*, No. 99 Civ. 3023(DC), 2002 WL 461513 (S.D.N.Y. Mar. 26, 2002) ...................................................................................................................................... 24

*In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) ...................................... 13, 18

*In re Petrobras Sec.*, 862 F.3d 250  (2d Cir. 2017) ...................................................................... 21

*In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013)..................................... 20

*Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88  (2d Cir. 2018). .................... 21

*Lanqing Lin v. Everyday Beauty Amore Inc.*, No. 18-CV-729 (BMC), 2019 WL 3037072 (E.D.N.Y. July 11, 2019) .......................................................................................................... 13

iii

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) .................................................... 15

*Mayfield v. Asta Funding*, No. 14-CV-2591 (LAP)(JLC) (S.D.N.Y. Apr. 10, 2018) ................. 23

*McDowall v. Cogan*, 216 F.R.D. 46 (E.D.N.Y. 2003) .................................................. 25

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292 (2d Cir. 2003) ............................................ 12

*Penn. Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111 (2d Cir. 2014) ... 14

*Philemon v. Aries Capital Partners, Inc.*, No. 18 Civ. 1927 (CLP) (E.D.N.Y) .................... 17, 23

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ......................................................... 18

*Stinson v. Houslanger & Associates et al.*, No. 18 Civ. 11350 (S.D.N.Y) .......................... 3, 4, 13

*Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279 (S.D.N.Y. 2012) .............................. passim

*Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015) .................................... passim

*U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013) ............................................ 20

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). .................................................... 15, 16, 19

*Woe by Woe v. Cuomo,* 729 F.2d 96 (2d Cir. 1984) .................................................... 24

## FEDERAL RULES, STATUES, AND REGULATIONS

Federal Rule of Civil Procedure 23 ...................................................................... passim

Federal Rule of Civil Procedure 30 ........................................................................... 2

Federal Rule of Civil Procedure 32 .......................................................................... 13

Federal Rule of Civil Procedure 68 ........................................................................... 3

Federal Rule of Evidence 801 ................................................................................... 13

## STATE RULES, STATUES, AND REGULATIONS

FDCPA, New York General Business Law § 349 ............................................................ passim

New York Civil Pratice Law and Rules § 3211 ................................................................ 8

New York Civil Pratice Law and Rules § 5222 ................................................................ 5

New York Civil Pratice Law and Rules § 5230 ............................................................................ 5

New York General Business Law § 349 ............................................................................ passim

New York Judiciary Law § 487 ............................................................................ passim

## SECONDARY SOURCES

7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1785.3
   (3d ed. 2019) ............................................................................................................... 24

## PRELIMINARY STATEMENT

Named Plaintiffs Jenifer Dupres, William Soto, Luis Viruet, and Domingo Tolentino bring this action to challenge an unlawful debt collection scheme operated by Defendants, a debt collection law firm and two of its attorneys. Through this motion, Named Plaintiffs seek to certify a class of individuals who bring "Opposition Claims" stemming from Defendants' practice of baselessly, and deceptively, prolonging litigation when those individuals seek to stop Defendants' executions of their funds.

The Complaint is directed at two primary components of Defendants' scheme. First, Plaintiffs' "Execution Claims" allege that Defendants unlawfully execute on old New York City Civil Court judgments through wage garnishment or bank restraint without doing any meaningful review of the judgments or the case files and, as a result, routinely execute on judgments unlawfully obtained through so-called "sewer service." Second, Plaintiffs' "Opposition Claims" allege that when consumers challenge the executions in court, Defendants unlawfully and baselessly oppose the individuals' Motions, forcing the individuals to attend multiple court dates and needlessly prolonging the legal proceedings against them. Plaintiffs presently seek certification with respect to the Opposition Claims only, because ample evidentiary proof is already available—drawn from Civil Court files and the records of previous litigation against Defendants—with which to establish the relevant criteria in Federal Rule of Civil Procedure 23.

Plaintiffs presently seek certification, under Rule 23(b)(2) and 23(b)(3), of an "Opposition Claims Class" comprising:

> All individuals against whom Defendants issue (or will issue) an execution on a judgment obtained in New York City Civil Court on behalf of a judgment creditor that did not originally obtain the judgment; who filed (or will file) a Motion to Vacate that judgment; and against whom Defendants filed and/or served (or will file and/or serve) an Opposition to the Motion that does not contain the Affidavit of Service ("Class Members").

Certification of this "Opposition Claims Class" is appropriate because the Opposition Claims arise from a unitary course of conduct: when Class Members challenge Defendants' executions in court by filing Motions to Vacate the judgments against them, Defendants respond in the same way every time. They file a standard, boilerplate Opposition, sworn under penalty of perjury, that asserts that the consumer was lawfully served and the judgment was lawfully obtained, when Defendants have not reviewed, and do not even have access to, the affidavit of service and other key documents. Defendants then require Class Members to appear at unnecessary court dates over many months.

The Complaint alleges, and Plaintiffs will prove at a later stage of these proceedings, that this class-wide conduct violates the Fair Debt Collection Practices Act, New York General Business Law § 349, and New York Judiciary Law § 487. *See* Compl. ¶¶ 331(f-h), 335(f-h), 341(f-h).

Plaintiffs make this motion on the accompanying Declaration of Jessica Ranucci ("Ranucci Decl.") and its exhibits, which include Affidavits from the Named Plaintiffs, a sample of Oppositions filed by Defendants against Named Plaintiffs and other Class Members, and publicly available transcripts of recent depositions of Defendant Todd Houslanger ("Houslanger") (testifying on behalf of Defendant Houslanger & Associates, PLLC ("H&A") pursuant to Fed. R. Civ. P. 30(b)(6)), and Defendant Bryan Bryks (testifying individually), in a Southern District of New York debt collection case raising similar issues to those presented here.[1]

---

[1] Ranucci Decl. Ex. A (state court Oppositions filed by Defendants against Named Plaintiffs and *Burkett v. Houslanger & Associates* Named Plaintiffs) ("Sample Oppositions"); Ranucci Decl. Ex. B, Affidavit of Jenifer Dupres ("Dupres Aff."); Ranucci Decl. Ex. C, Affidavit of William Soto ("Soto Aff."); Ranucci Decl. Ex. D, Affidavit of Domingo Tolentino ("Tolentino Aff."); Ranucci Decl. Ex. E, Affidavit of Luis Viruet ("Viruet Aff."); Ranucci Decl. Ex. F, Deposition of Houslanger & Associates, PLLC ("Houslanger Dep."), *Stinson v. Houslanger & Associates et al.*, No. 18 Civ. 11350 (S.D.N.Y), ECF No. 121-4; Ranucci Decl. Ex. G, Deposition of Bryan Bryks ("Bryks Dep."), *Stinson v. Houslanger & Associates et al.*, No. 18 Civ. 11350 (S.D.N.Y), ECF No. 121-5.

## PROCEDURAL HISTORY

In April 2019, three consumers harmed by Defendants' unlawful debt collection practices, represented by Plaintiffs' counsel, filed *Burkett v. Houslanger & Associates et al*., No. 19 Civ. 2285 (LDH) (JO). Compl., ECF No. 1.[2] The *Burkett* complaint brought the same allegations as those in this action, asserted on behalf of three individual plaintiffs and the same putative class. *See id.* In June 2019, Defendants made offers of judgment pursuant to Federal Rule of Civil Procedure 68 to the three original proposed class representatives. They accepted, and concurrently sought leave to amend the complaint to add a new proposed class representative. Nots. of Acceptance, ECF Nos. 20-22; Letter (June 29, 2019), ECF No. 23. The Court granted leave, and a new consumer filed the First Amended Complaint in the *Burkett* action, again bringing the same allegations on behalf of the same putative class as those alleged in this action. Minute Entry (Sept. 30, 2019); First Am. Compl., ECF No. 31. In October 2019, Defendants made a Rule 68 offer to the new proposed class representative. She accepted, and concurrently sought leave to amend the complaint to add Ms. Dupres, Mr. Soto, Mr. Tolentino, and Mr. Viruet as new proposed class representatives. Not. of Acceptance, ECF No. 37; Letter (Oct. 24, 2019), ECF No. 38; Proposed Second Am. Compl. ECF Nos. 38-1, 38.2. Judgment was thereafter entered in her favor. J., ECF No. 39. Since she was the only remaining plaintiff in the case, the Court did not decide the pending motion to amend. *See* Electronic Order (Nov. 26, 2019).

Plaintiffs then filed this action, asserting individual claims on behalf of Ms. Dupres, Mr. Soto, Mr. Tolentino, and Mr. Viruet, and the same class claims as those asserted in *Burkett*. Defendants' answer to the Complaint or motion to dismiss is due on January 27, 2020.

---

[2] All citations in this paragraph are to the *Burkett* docket.

# BACKGROUND

## A.  Defendants' Business is to Collect on Old Judgments

Defendant Houslanger & Associates, PLLC ("H&A") is a debt collection law firm. Defendant Todd Houslanger ("Houslanger") is the managing attorney of the firm, and Defendant Bryan Bryks ("Bryks") was, until August 2019, an attorney at the firm. Houslanger Dep. 82:13-83:16, 148:25; Bryks Dep. 94:4-7.[3] Both Houslanger and Bryks have stated that they had responsibility for "everything" at the firm. Houslanger Dep. 172:5-9, Bryks Dep. 15:7-10. The majority of Defendants' business is representing judgment buyers: entities that purchase New York City Civil Court judgments obtained by other creditors. Houslanger Dep. 69:14-24; 71:2-12, 73:18-75:18. Defendants did not represent the debt buyers who originally obtained the judgments; those debt buyers were represented by other law firms. *Id*. 76:6-77:3.

Defendants collect debt from at least 5,000 New York City residents each year; by their own estimation, the number of consumers against whom Defendants attempt to execute on judgments is much higher—in the tens of thousands. *See* Ranucci Decl. Ex. I at 1; Houslanger Dep. 70:8-13, 75:6-13, 76:6-15, 136:19-23, 140:3-19. H&A generally keeps as a fee for its legal

---

[3] The Depositions of Defendants Houslanger and Bryks cited here are from *Stinson v. Houslanger & Associates et al.*, No. 18 Civ. 11350 (S.D.N.Y), an individual action brought against H&A, Bryks, and Houslanger under the FDCPA, N.Y. G.B.L. § 349, and N.Y. Jud. Law § 487. Houslanger and Bryks were deposed in the *Stinson* action in September and October 2019, respectively—the first time that either had ever been deposed in connection with their debt collection work. Houslanger Dep. 9:4-6, 64:6-15; Bryks Dep. 7:10-12. The deposition transcripts were filed publicly on the *Stinson* docket. *Stinson v. Houslanger & Associates et al.*, ECF Nos. 121-4, 121-5. The allegations in the *Stinson* complaint overlap significantly with the allegations in this action, including: H&A attempted to execute by wage garnishment against the plaintiff on an old (2006) New York City Civil Court judgment, Compl., *Stinson v. Houslanger & Associates et al.*, ECF No. 1 ¶¶ 19, 24, 32, 34; the plaintiff was never served in the underlying lawsuit, but a false affidavit of service was filed and a default judgment obtained against her, *id*. ¶¶ 22-24; the plaintiff first learned of the collections suit when H&A sought to garnish her wages, *id.* ¶ 32; before receiving the wage garnishment, the plaintiff did not know about the lawsuit and had not received assignment paperwork, *id.* ¶¶ 33, 37; the plaintiff filed a *pro se* Motion to Vacate in a New York City Civil Court, *id.* ¶¶ 41-42; Defendants filed an Opposition to the Motion, signed by Bryks under penalty of perjury, falsely claiming that she was served, *id.* ¶¶ 45, 47; Defendants wrongfully prolonged the legal proceedings in connection with the Motion, *id.* ¶¶ 39, 58; and, when confronted with proof that plaintiff was never served, Defendants pressured her to sign a release that would waive any claims she could bring against them, *id.* ¶¶ 60-73.

services between 20% and 40% of the amount collected from consumers. Houslanger Dep. 336:12-17.

### B.  Plaintiffs' Execution Claims Allege Execution Without Sufficient Review or Notice

Plaintiffs' Execution Claims—as to which Plaintiffs do not presently seek class certification—allege that Defendants unlawfully execute on judgments against Named Plaintiffs and putative class members by issuing wage garnishments or bank restraints in their role as "as officer[s] of the court." *See* N.Y. C.P.L.R. §§ 5222(a), 5230(b); Compl. ¶¶ 331(a-e), 335(a-e), 341(a-e). The Complaint alleges that Defendants review virtually no documentation and engage in no meaningful attorney review before issuing these income executions and bank restraints— specifically, that Defendants do not have, and do not review, an affidavit of service attesting to proper service in the underlying lawsuit and other key documents. Compl. ¶¶ 43-76.

The Complaint further alleges that many of the judgments on which Defendants execute were entered as a result of "sewer service," the practice of failing to lawfully serve a summons and complaint and then filing a fraudulent affidavit of service. *Id.* ¶ 57; *see also* Dupres Aff. ¶ 5 (declaring she was never served in action against her); Soto Aff. ¶ 5 (same); Tolentino Aff. ¶ 5 (same); Viruet Aff. ¶ 5 (same).  The Execution Claims also allege that Defendants execute without sending any notices that the law requires them to send, including a notice of the assignment of judgment, a change of attorney form, or a notice of consumers' rights to validate the debt. Compl. ¶¶ 77-92.

The Complaint alleges that because Class Members were never served with the court papers and did not receive the required notices, they first learned about the judgments and the underlying lawsuits when they received executions issued by Defendants. Compl. ¶ 97. For example, when Named Plaintiff Tolentino received in May 2018 an income execution from

Defendants, it was from a law firm he had never heard of, to collect on a purported judgment issued in a case against him more than ten years earlier that he had never heard of, in which he had never been served. Tolentino Aff. ¶¶ 3-4. Likewise, none of the other Named Plaintiffs learned about the existence of the lawsuits or judgments against them until 2017 or 2018, when Defendants issued wage garnishments against Ms. Dupres and Mr. Viruet, and issued a bank restraint against Mr. Soto. Dupres Aff. ¶¶ 3-4, 6-7; Soto Aff. ¶¶ 3-4, 6-7; Viruet Aff. ¶¶ 3-4, 6-7.

### C. Defendants Unlawfully Oppose Class Members' Efforts to Stop the Executions

Plaintiffs' Opposition Claims—as to which Plaintiffs presently seek class certification—allege that Defendants oppose Class Members' Motions to Vacate without undertaking a meaningful review of the case; make false and misleading statements in the course of opposing Class Members' Motions to Vacate; and, in bad faith, unduly prolong legal proceedings and require Class Members to appear at unnecessary court dates. *See* Compl. ¶¶ 331(f-h), 335(f-h), 341(f-h). The evidence offered in support of Plaintiffs' class certification motion demonstrates that Defendants follow roughly the same steps, and use roughly the same documents, to do so in each case.

### 1. Defendants Follow Uniform Practices in Filing Oppositions

The proposed class includes those individuals who responded to Defendants' executions by filing Motions to Vacate the judgments against them in New York City Civil Court. Virtually all of these individuals, including the Named Plaintiffs, were *pro se*. *See* Dupres Aff. ¶ 8; Soto Aff. ¶ 8; Tolentino Aff. ¶ 8; Viruet Aff. ¶ 8; Ranucci Decl. ¶¶ 15, 33.  The Motions to Vacate filed by the Named Plaintiffs and many other Class Members expressly assert that they were never served in the underlying actions. *See* Sample Oppositions; Ranucci Decl. ¶ 16; *see also* Dupres Aff. ¶¶ 5, 8; Soto Aff. ¶¶ 5, 8; Tolentino Aff. ¶¶ 5, 8; Viruet Aff. ¶¶ 5, 8.

In response to these Motions to Vacate, Defendants typically prepare, serve, and file an Opposition to the Motion to Vacate ("Opposition") and then appear in court to oppose the Motions. Houslanger Dep. 129:13- 131:16, 177:13-25; Bryks Dep. 91:25-92:7. Plaintiffs' Counsel's review of state court records indicates that Defendants file Oppositions against at least 120-240 Class Members per year. Ranucci Decl. ¶¶ 25-36. Defendants have testified that they prepared at least sixty, and as many as four hundred, Oppositions to Motions to Vacate each year. Houslanger Dep. 242:6-17; Bryks Dep. 89:20-24, 90:12-22.

All Oppositions are drafted through the same process: they are first written by Sandy Karow, a secretary at H&A, and then given to an attorney for review. Houslanger Dep. 94:13-14; 129:13-130:3, 176:2-177:5; Bryks Dep. 96:12-97:7.

Each Opposition contains boilerplate language that is largely the same. Sample Oppositions; *see also* Houslanger Dep. 130:4-131:16 (Houslanger testifying that language of the Oppositions was "more or less . . . the same."). The Oppositions filed in the cases against the four Named Plaintiffs and the four *Burkett* proposed class representatives (the "Sample Oppositions") are attached as Exhibit A to the Declaration of Jessica Ranucci. Plaintiff's Counsel has reviewed a total of twenty Oppositions filed in cases against Class Members, all of which follow the same format.  Ranucci Decl. ¶¶ 8-13. The Oppositions were signed by Bryks under penalty of perjury. Sample Oppositions; Ranucci Decl. ¶ 14.

None of the Oppositions filed against Named Plaintiffs or Class Members contain or attach the affidavit of service. *See supra* 1-2 (defining Opposition Claims Class); *see also* Sample Oppositions; Ranucci Decl. ¶ 18; *cf.* N.Y. C.P.L.R. § 3211(e) ("[P]apers in opposition to a motion based on improper service shall contain a copy of the proof of service[.]"). Indeed,

most Oppositions filed against Class Members admit that "[a] copy of the Affidavit of Service is unavailable to be attached to this opposition." Sample Oppositions; Ranucci Decl. ¶ 21.

      In preparing Oppositions against class members, neither Bryks nor Houslanger nor anyone else at H&A meaningfully reviews critical documentation related to the case, including, in particular, the affidavit of service. Defendant Houslanger has testified that where H&A possesses a copy of the affidavit of service, it does attach that document. Houslanger Dep. 244:12-245:7, 247:17-248:5. Accordingly, H&A did not possess (and thus did not review) affidavits of service when preparing and filing Oppositions against Class Members.

      Because H&A does not possess or review the affidavit of service, neither Bryks nor anyone else at H&A knows the identity of the process server who purportedly effectuated service, or any facts regarding service. Houslanger Dep. 257:17-24. Accordingly, the Oppositions do not contain any facts regarding service, such as how, when, or where the class member was allegedly served, or the name of the process server. Sample Oppositions; Ranucci Decl. ¶ 19. In addition, H&A is aware of the widespread prevalence of sewer service, and maintains a list of approximately a dozen process servers whose affidavits may be subject to additional scrutiny. Houslanger Dep. 255:9-24. But without the affidavits of service, Defendants do not know, when writing the Opposition, whether the process server appears on their list of suspect servers. For example, Defendants filed Oppositions against Ms. Dupres and Mr. Viruet without knowing the identity of the process servers who claimed to have served them—both of whom have been barred from holding a New York City process serving license due to documented process serving violations. Ranucci Decl. ¶¶ 51-55. Nonetheless, the Oppositions state that "[u]pon information and belief, the [class member] was properly served in this matter." Sample Oppositions; Ranucci Decl. ¶ 20.

When preparing the Oppositions, Defendants do not have or review other key documents relating to the case. Defendants do not take any steps to request documents or information upon receipt of a consumer's Motion to Vacate. Bryks Dep. 152:7-17. Most Oppositions do not even attach a copy of the judgment itself; many expressly admit that the Defendants did not have a copy of the judgment (and thus could not have reviewed it). Sample Oppositions; Ranucci Decl. ¶¶ 22-23.  Defendants do not have (and thus do not review) case files underlying the judgments, even though they, like any other member of the public, can obtain them for free from the New York City Civil Court archives. Ranucci Decl. ¶¶ 39-42. Notwithstanding the Defendants' failure to review the affidavit of service or other key documents—often including the judgment itself—each Opposition further states that "[a]ny and all restraints of bank accounts . . . or garnishment of wages, resulted from the proper execution of a judgment of this Court, lawfully obtained and issued therefrom." Sample Oppositions; Ranucci Decl. ¶ 24.

The Opposition Claims allege that, because Defendants review virtually no documentation regarding the judgments, service, or their authority to enforce, the representations by Defendants in the Oppositions are false and misleading, and are made without a reasonable basis and without having undertaken any investigation that could have led to a good faith belief in their truth. Compl. ¶¶ 111, 114, 119-21.

### 2.  Defendants Follow Uniform Practices in Prolonging Legal Proceedings

Defendants' general practice is to file, and serve on the Class Member, the Oppositions in person at the first court date for a Class Member's Motion to Vacate. Dupres Aff. ¶ 9 (Opposition filed at first court date); Soto Aff. ¶ 9 (same); Tolentino Aff. ¶ 9 (same); Viruet Aff. ¶ 9 (same); *see also* Ranucci Decl. ¶¶ 17, 45. Defendants' filing of Oppositions without the affidavit of service has the effect of prolonging the legal proceedings against Class Members. Under standard court practice, most Class Members' cases are adjourned for a second court date

9

at least ten weeks after the first, to allow time for the court file, which contains the affidavit of service, to become available. Ranucci Decl. ¶ 47. Since the Class Member only sees the affidavit of service for the first time at that second court date, standard court practice is to adjourn again, for a third court date, to allow the Class Member to prepare a written response. *Id*. ¶ 48. Once a Class Member is finally able to view the affidavit of service, it is often plain that service was improper: for example, because the server claimed to have served the Class Member at an address where he or she did not live, or claimed to have made substitute service on a person who does not exist. *See, e.g.*, *id*. ¶ 56.

Defendants further prolong the legal proceedings against Class Members by continuing to baselessly oppose their Motions at subsequent court dates, including, in some cases, even after Class Members present documentary evidence that the judgments on which Defendants executed were invalid. For example, Defendants continued to litigate against Mr. Soto even after he presented them with an affidavit attaching three pieces of proof that he did not live at the service address. *Id*. ¶¶ 56-57. Defendants continued to litigate against Eduardo Burkett, one of the original proposed class representatives in the *Burkett* action, even after he presented them with an affidavit attaching eight pieces of proof that he was not served. *Id*. ¶¶ 58-59.

As a result of Defendants' conduct, Named Plaintiffs and many Class Members have to attend multiple court dates over the span of many months. Ms. Dupres had to attend three court dates before she was able to obtain a judicial decision that that she had successfully "controverted service." *Id*. ¶ 61. Mr. Soto had to attend three court dates before he was able to obtain a judicial decision that he had "successfully challenged . . . service as alleged in the affidavit of service." *Id*. ¶ 62.  Mr. Tolentino had to attend five court dates before a judge acknowledged that he had successfully rebutted the presumption of service. *Id*. ¶ 63. And Mr.

Viruet had to attend three court dates before he was able to obtain a judicial decision that a judge decided that that the Court "lack[ed] . . . personal jurisdiction" over Mr. Viruet because service was improper. *Id*. ¶ 64. The sample of records reviewed by Plaintiffs' Counsel shows that the average Class Member has three or more court dates scheduled, over a span of an average of four or more months, in order to resolve his or her Motion to Vacate. *Id*. ¶¶ 37-38.

The Complaint alleges that Defendants prolong the legal proceedings in this manner to induce Class Members to drop their challenges to the executions or enter settlements favorable to Defendants. Compl. ¶¶ 123-30. Defendants present many class members who challenge the executions, including Ms. Dupres and Mr. Tolentino, with a deceptive release purporting to discharge Defendants from any liability in exchange for vacating the judgment. *Id*. ¶¶ 131-36; Dupres Aff. ¶ 12; Tolentino Aff. ¶ 12. The Complaint alleges that these tactics are often successful, and many Class Members accede to Defendants' demands and agree to drop or settle their Motions. Compl. ¶ 129.

### D.  Defendants' Conduct Harms Plaintiffs and the Class

The Complaint alleges that Defendants' unlawful execution and opposition practices cause harm to the Named Plaintiffs and members of the putative class, including that Named Plaintiffs and Class Members were deprived of their funds (on a permanent or temporary basis) due to garnished wages, restrained or levied bank accounts, or settlements; spent time and money to appear at multiple court dates and otherwise challenge the executions, including lost wages due to missed work, postage, photocopying, transportation, and childcare; and incurred actual and emotional damages. Compl. ¶¶ 140-43. Defendants' actions are ongoing: in January 2020 alone, Defendants are or were scheduled to appear in court in response to thirty consumers' Motions to Vacate. Ranucci Decl. ¶ 32.

## ARGUMENT

Plaintiffs seek certification of an injunctive class under Fed. R. Civ. P. 23(b)(2) and a damages class under Fed. R. Civ. P. 23(b)(3) comprising:

> All individuals against whom Defendants issue (or will issue) an execution on a judgment obtained in New York City Civil Court on behalf of a judgment creditor that did not originally obtain the judgment; who filed (or will file) a Motion to Vacate that judgment; and against whom Defendants filed and/or served (or will file and/or serve) an Opposition to the Motion that does not contain the Affidavit of Service (the "Class Members").

This "Opposition Claims Class" asserts the Opposition Claims—that Defendants violated the FDCPA, N.Y. G.B.L. § 349, and N.Y. Judiciary Law § 487, by: opposing Class Members' Motions to Vacate without undertaking a meaningful review of the case; making false and misleading statements in the course of opposing Class Members' Motions to Vacate; and, in bad faith, unduly prolonging legal proceedings and requiring Class Members to appear at unnecessary court dates. *See* Compl. ¶¶ 331(f-h), 335(f-h), 341(f-h); *see also, e.g.*, *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300-05 (2d Cir. 2003) (FDCPA prohibits false and misleading statements and statements by attorneys made without meaningful attorney review); *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 138 (2d Cir. 2017) ("unduly prolong[ing] legal proceedings or requir[ing] a consumer to appear at an unnecessary hearing" violates FDCPA).

Although this litigation is in its early stages, Plaintiffs can meet their burden to establish that the Opposition Claims Class satisfies the requirements of Rule 23(a), 23(b)(2), and 23(b)(3). *See In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). Plaintiffs' motion is supported by ample "evidentiary proof," *Comcast Corp. v. Behrend*, 569 U.S. 27, 27 (2013), including affidavits of the Named Plaintiffs, documents filed by Defendants in the debt

collection cases, and transcripts of sworn depositions taken in a similar federal court action.[4] In

such circumstances, "class certification should be resolved early on." *China Agritech, Inc. v.*

*Resh*, 138 S. Ct. 1800, 1807 (2018).

## I.     The Proposed Class Meets the Requirements of Rule 23(a)

Under Federal Rule of Civil Procedure 23(a), "a class may be certified only if four

prerequisites have been met: numerosity, commonality, typicality, and adequacy of

representation." *Sykes v. Mel S. Harris & Assocs. LLC* ("*Sykes II*"), 780 F.3d 70, 80 (2d Cir.

2015). The proposed class meets all of these requirements.

### A.  The Proposed Class is Sufficiently Numerous

Federal Rule of Civil Procedure 23(a)(1) requires that a class be "so numerous that

joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is generally

presumed for classes larger than forty members. *Consol. Rail Corp. v. Town of Hyde Park*, 47

F.3d 473, 483 (2d Cir. 1995). Plaintiffs' proposed class easily meets the numerosity requirement.

Defendants have testified that H&A opposes Motions to Vacate filed by at least sixty, and as

many as four hundred, consumers per year. Houslanger Dep. 242:6-17; Bryks Dep. 89:20-24,

90:12-22. Plaintiffs' Counsel has reviewed state court records of Defendants' court appearances,

which show that between October 2019 and January 2020 alone, Defendants had or have

scheduled court dates on Motions to Vacate filed by at least seventy-four consumers. Ranucci

Decl. ¶¶ 31-32. This figure is likely underinclusive, since it only reflects cases in which

Defendants have entered a formal notice of appearance; the Complaint alleges that Defendants

---

[4] While "[t]he Second Circuit has not addressed th[e] issue" of whether evidence submitted in support of a class certification motion needs to be admissible, *see Lanqing Lin v. Everyday Beauty Amore Inc.*, No. 18-CV-729 (BMC), 2019 WL 3037072, at *2 (E.D.N.Y. July 11, 2019), the depositions of Houslanger and Bryks taken in the *Stinson* matter would be admissible in this action. *See* Fed. R. Civ. P. 32(a)(3), Fed R. Civ. P. 32(a)(8), and Fed. R. Evidence 801(d)(2).

often do not do so. *Id.* ¶¶ 26-27; Compl. ¶ 86.  Based on this review, Plaintiffs' Counsel estimates that Defendants oppose Motions to Vacate filed by at least 120-240 Class Members per year. Ranucci Decl. ¶ 36.

Moreover, the "the numerosity inquiry is not strictly mathematical but must take into account the context of the particular case," including "the financial resources of class members [and] their ability to sue separately." *Penn. Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014) (subsequent history omitted). The class here is not made up of "sophisticated . . . investors . . . [with] millions of dollars at stake," *id.*, but rather of low-income individuals who, absent this class action, would likely "be without effective strength to bring their opponents into court at all," *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quotation omitted); *see also* Ranucci Decl. ¶ 4.

### B.   There are Common Questions of Law and Fact

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is met if the class members' claims depend on a "common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Commonality is often found where each class member's injuries "derive from a unitary course of conduct." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997).

The Opposition Claims stem from Defendants' unitary course of conduct in opposing Class Members' Motions to Vacate. Specifically, Defendants file boilerplate Oppositions against all Class Members that contain the same material statements, *see* Sample Oppositions; Ranucci Decl. ¶¶ 20-21, 23-24; Houslanger Dep. 130:4-139:16 (language in Oppositions is "more or

less . . . the same"); the Oppositions do not attach the affidavits of service and other key

documents, *see* Sample Oppositions; Ranucci Decl. ¶¶ 18, 22; Defendants prepare the

Oppositions without reviewing those documents, Sample Oppositions; Houslanger Dep. 225:7-

13, 227:6-8, 244:12-245:8, 247:17-248; Bryks Dep. 152:7-17; when filing the Oppositions,

Defendants do not generally know the identity of the process server who purportedly effectuated

service and thus whether the server appears on H&A's list of suspect servers, Houslanger Dep.

255:9-24, 257:17-24; all Oppositions are prepared in the same manner—they are originally

drafted by Houslanger's secretary and then reviewed by an attorney, *id*. 94:13-14; 129:13-130:3,

176:2-177:5, Bryks Dep. 96:12-97:7; and by filing Oppositions, Defendants require Class

Members to attend unnecessary court dates, generally three or more, Ranucci Decl. ¶ 37.

Common questions of law and fact are "[i]nherent in this alleged course of conduct"

because Defendants acted in a similar manner toward all putative class members. *Sykes v. Mel

Harris & Assocs., LLC* ("*Sykes I*"), 285 F.R.D. 279, 290 (S.D.N.Y. 2012). Questions of law and

fact common to the class include, among others:

- whether Defendants fail to conduct meaningful attorney review when opposing Class
  Members' motions and whether this conduct violates the FDCPA, N.Y. G.B.L. § 349,
  and N.Y. Jud. L. § 487;

- whether Defendants' statement in each Opposition that "[u]pon information and belief,
  the [class member] was properly served in this matter" is false, deceptive, or misleading,
  and whether this statement violates the FDCPA, N.Y. G.B.L. § 349, and N.Y. Jud. L.
  § 487;

- whether Defendants' statement in each Opposition that "[a]ny and all restraints of bank
  accounts . . . or garnishment of wages, resulted from the proper execution of a judgment
  of this Court, lawfully obtained and issued therefrom" is false, deceptive, or misleading,
  and whether this statement violates the FDCPA, N.Y. G.B.L. § 349, and N.Y. Jud. L.
  § 487;

- whether Defendants' failure to include the affidavits of service in their Oppositions
  "unduly prolongs legal proceedings or requires a consumer to appear at an unnecessary
  hearing," whether that conduct is "in bad faith," *Arias*, 875 F.3d at 138, and whether this
  conduct violates the FDCPA, N.Y. G.B.L. § 349, and N.Y. Jud. L. § 487;

- whether Defendants continue litigation in opposition to Class Members' Motions such that Class Members are "require[d] to appear at" additional "unnecessary hearing[s]," *Arias*, 875 F.3d at 138, whether that conduct is "in bad faith," *id.*, and whether this conduct violates the FDCPA, N.Y. G.B.L. § 349, and N.Y. Jud. L. § 487;

- whether, in requiring Class Members to attend unnecessary court appearances, Defendants "engage[] in unfair or unconscionable litigation conduct," *Arias*, 875 F.3d at 138, in violation of the FDCPA, N.Y. G.B.L. § 349, and N.Y. Jud. L. § 487.

Each of these questions raises common issues that can be resolved "in one stroke," which would "drive the resolution of the litigation." *Dukes*, 564 U.S. at 350.

*Sykes v. Mel S. Harris & Associates LLC et al.*, a Second Circuit decision affirming certification of a class of New York City consumers asserting FDCPA, N.Y. G.B.L. § 349, and N.Y. Jud. L. § 487 claims against a debt collection law firm, compels certification here. *See Sykes I*, 285 F.R.D. 279, *aff'd*, *Sykes II*, 780 F.3d 70. Like the Named Plaintiffs here, the *Sykes* plaintiffs alleged that the attorney defendants filed standard litigation documents that "follow[ed] a uniform format," *Sykes II*, 780 F.3d at 77, that those documents allegedly contained false statements that class members were lawfully served with process, *id.* at 76-78, and that Defendants' filing of such documents was "necessary to effectuating defendants' alleged scheme" to extract money through unlawfully obtained New York City Civil Court judgments, *id.* at 85.

The *Sykes* District Court found commonality because "plaintiffs' injuries derive from defendants' alleged unitary course of conduct," and because the litigation documents used by the defendants were "form" documents filed as "part of a standard practice with respect to each putative class member." *Sykes I*, 285 F.R.D. at 290-91.[5] The Second Circuit affirmed, finding

---

[5] *See also Sykes I*, 285 F.R.D. at 290 n.10 ("[C]ourts throughout [the Second] Circuit have routinely found that putative classes alleging debt collection schemes that employ false or misleading language in mailings sent to debtors satisfy the commonality requirement of Rule 23(a)(2) and warrant class certification under Rule 23(b)." (collecting cases)).

that the district court properly "determin[ed] that defendants' scheme, which had multiple components, was a 'unitary course of conduct' that depended . . . for its success" on filing standard, uniform false affidavits. *Sykes II*, 780 F.3d at 85; *see also, e.g.*, Mem. & Order, *Philemon v. Aries Capital Partners, Inc.*, No. 18 Civ. 1927 (CLP) (E.D.N.Y), ECF No. 52 at 14 (finding commonality because "plaintiff's claims all stem from the same unlawful debt collection scheme orchestrated by defendants," including that "[d]efendants acted in a similar manner toward all class members by filing nearly identical documents, containing similar misrepresentations, in connection with collection actions filed in New York City Civil Court").

### C.  Named Plaintiffs' Claims Are Typical of the Class Members'

Rule 23(a)(3) requires that class representatives' claims be typical of the claims of the class. The typicality requirement is met where, as here, "the disputed issue[s] of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Caridad v. Metro–N. Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999) (quotation omitted), *overruled on other grounds by In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24. "[M]inor variations in the fact patterns underlying individual claims" do not prevent a finding of typicality. *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993).

The Named Plaintiffs' claims are typical of the claims asserted by the putative class, in that Named Plaintiffs assert that Defendants' uniform litigation practices, described above, violated their own rights under the FDCPA, N.Y. G.B.L. § 349, and N.Y. Judiciary Law § 487. *See* Dupres Aff.; Soto Aff.; Tolentino Aff.; Viruet Aff. The putative class members assert precisely the same claims based on the same litigation practices. *See* Ranucci Decl. Ex. A; Compl. ¶¶ 331(f-h), 335(f-h), 341(f-h).

### D.  Named Plaintiffs are Adequate Representatives

The final requirement of Rule 23(a) is that the representative parties fairly and adequately represent the interests of the class.  Fed. R. Civ. P. 23(a)(4). "[A]dequacy is satisfied unless plaintiff's interests are antagonistic to the interest of other members of the class." *Sykes II*, 780 F.3d at 90 (internal quotation marks omitted). Named Plaintiffs have no interests antagonistic to the interest of other putative class members. *See* Dupres Aff. ¶ 2; Soto Aff. ¶ 2; Tolentino Aff. ¶ 2; Viruet Aff. ¶ 2. To the contrary, Named Plaintiffs have been subject to the same unlawful conduct as the other putative class members. Because "the same strategies that will vindicate plaintiffs' claims will vindicate those of the class," they are adequate class representatives. *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008).

### II.  The Proposed Class Meets the Requirements of Rule 23(b)

In addition to satisfying the prerequisites of Rule 23(a), at least one of the three subdivisions of Rule 23(b) must be satisfied in order to qualify for class certification. Here, Plaintiffs seek class certification of the Opposition Claims Class under both Rules 23(b)(2), for injunctive relief, and 23(b)(3), for damages.

### A.  The Proposed Injunctive Class Meets the Requirements of Rule 23(b)(2)

Rule 23(b)(2) supplies a basis for certification where, as here, the Defendants "ha[ve] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate [for] the class as a whole."  Fed. R. Civ. P. 23(b)(2). Certification under Rule 23(b)(2) is appropriate if the declaratory or injunctive relief sought would "benefit[] all [the class members] members at once." *Dukes*, 564 U.S. at 362.

Named Plaintiffs and Class Members seek a declaration that Defendants have violated the FDCPA, N.Y. G.B.L. § 349, and N.Y. Jud. L. § 487, and seek to enjoin all Defendants from

engaging in the unlawful debt collection practices set forth in the Complaint. *See* Compl. at 52-53. This class-wide injunctive relief is appropriate, because Defendants have acted (and are acting) on grounds that apply generally to the class by opposing Named Plaintiffs' and Class Members' Motions in a standard manner, including by filing uniform Oppositions. Absent class-wide injunctive relief, Defendants will continue these practices unabated, causing harm to more and more low-income consumers each month. The proposed injunctive relief would also provide a potential benefit to Class Members who have already been harmed, as every Class Member faces a non-speculative risk of illegal collection actions by Defendants in the future, through continued litigation on the same underlying judgment, or new litigation on a different action or underlying judgment. *See* Ranucci Decl. ¶¶ 49-50; *Sykes II*, 780 F.3d at 98 (affirming certification of 23(b)(2) class, and explaining that "while named plaintiffs have had their default judgments vacated, they might each still be subject to a further action by these same defendants").

### B.   The Proposed Damages Class Meets the Requirements of Rule 23(b)(3)

Plaintiffs also seek certification of a class under Rule 23(b)(3) because they are entitled to monetary damages under the FDCPA, N.Y. G.B.L. § 349, and N.Y. Jud. L. § 487.

### 1.   Common Questions Predominate

Certification under Rule 23(b)(3) is appropriate here because questions of law or fact common to the class predominate over individual questions. "The predominance requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (quotation omitted). The rule

does not require that individual questions be absent; to the contrary, "[t]he text of Rule 23(b)(3) itself contemplates that such individual questions will be present." *Sykes II*, 780 F.3d at 81.

"[C]ases regarding the legality of standardized documents and practices often result in the predomination of common questions of law or fact and are, therefore, generally appropriate for resolution by class action." *Sykes I*, 285 F.R.D. at 293 (quoting *D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996)). Plaintiffs' Opposition Claims are based on the alleged illegality of standardized documents (the Oppositions) and standardized practices (failing to meaningfully review documentation and baselessly continuing to oppose). Again, *Sykes* supports certification on the similar facts presented here. The District Court in *Sykes* found that, notwithstanding that "individual issues may exist as to causation and damages," the predominance requirement was met because:

> Every potential class member's claim arises out of defendants' uniform, widespread practice of filing automatically-generated, form affidavits . . . to obtain default judgments against debtors in state court. Whether this practice violates the FDCPA . . . New York GBL § 349, [or] New York Judiciary Law § 487 . . . does not depend on individualized considerations.

*Sykes I*, 285 F.R.D. at 293. Any potential individual issues that could arise here would not defeat certification. For example, in affirming the District Court in *Sykes*, the Second Circuit specifically rejected that "individual issues related to service" would cause "any individualized causation issues with respect to plaintiffs' claims under the FDCPA." *Sykes II*, 780 F.3d at 91. Nor would individualized issues as to whether each class member owed the underlying debt be relevant to certification, the Court held, given the well-established rule that the existence of an "actual debt  is not necessary to bring claims under the FDCPA." *Id.* (citing *Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) ("[A] debtor has standing to complain of violations of

the [FDCPA], regardless of whether a valid debt exists.")). Accordingly, even if there are individual issues here, the common issues clearly predominate.

### 2.   Class Action is a Superior Method of Adjudication

Rule 23(b)(3) also requires a finding that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FDCPA lawsuits concerning the use of standard documents regularly satisfy the superiority requirement. *See Sykes I*, 285 F.R.D. at 294. Adjudicating claims stemming from nearly identical documents in a single action avoids an unwieldy number of repetitive individual lawsuits and the potential for inconsistent results. Moreover, certifying a Rule 23(b)(3) class action here would help to vindicate the rights of low-income New York consumers who lack the means to pursue individual claims, "result[ing] in efficiencies of cost, time, and judicial resources and permit[ting] a collective recovery where obtaining individual judgments might not be economically feasible." *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 93 (2d Cir. 2018).

### 3.   The Proposed Class is Ascertainable

Rule 23(b)(3) "contains an implicit threshold requirement that the members of a proposed class be readily identifiable, often characterized as an 'ascertainability' requirement." *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017) (internal quotation omitted). Plaintiffs' proposed class is ascertainable, in that it is defined "using objective criteria that establish a membership with definite boundaries." *Id.* Plaintiffs' class definition is based on three criteria: (1) Defendants issued an execution against the class member on a New York City Civil Court judgment, on behalf of a judgment creditor that did not originally obtain the judgment; (2) the class member filed a Motion to Vacate that judgment; and (3) Defendants filed and/or served an Opposition to the Motion that did not contain the Affidavit of Service. Each of these "clearly

objective" criteria, *id.* at 269, is contained in Defendants' business and litigation records and/or in public court files.

### 4. NYLAG Satisfies the Rule 23(g) Prerequisites for Class Counsel

Rule 23(g)(1)(A) sets forth the factors a court must consider in appointing class counsel: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1).

NYLAG is a nonprofit organization that provides high quality, free civil legal services to low-income New Yorkers in consumer protection and other fields. Ranucci Decl. ¶ 1. NYLAG's Special Litigation Unit, which specializes in class actions to benefit low-income New Yorkers, has been described as "one of the highest caliber impact litigation practices in New York City." Declaration of Matthew Brinckerhoff ¶ 15, *Burkett v. Houslanger & Assocs. et al.*, No 19 Civ. 2285 (LDH) (JO), ECF No. 43-3. NYLAG is particularly knowledgeable with respect to the claims asserted in this litigation, and has been appointed class counsel in connection with class actions affecting over one hundred thousand low-income consumers in the past three years alone. Ranucci Decl. ¶ 65. For example, the Honorable Loretta Preska appointed NYLAG class counsel as part of a settlement providing redress to 60,000 New Yorkers illegally sued by a debt collection law firm in New York City Civil Court. *Mayfield v. Asta Funding*, No. 14 Civ. 2591 (LAP)(JLC) (S.D.N.Y.), ECF No. 130 (Apr. 10, 2018). Just last month, the Honorable Cheryl Pollak appointed NYLAG class counsel as part of a settlement in a similar action, noting that NYLAG was "well-qualified" and that NYLAG's work enforces "the rights of low-income New Yorkers who would likely otherwise be without the ability to secure legal representation" so that they "are vindicated in the courts and individuals are provided meaningful redress." *Philemon v.*

*Aries Capital Partners, Inc.*, No. 18 Civ. 1927 (CLP) (E.D.N.Y.), ECF No. 58 at 17 (Dec. 10, 2019).[6]

NYLAG has spent over a year and a half investigating and litigating the claims of Named Plaintiffs, the *Burkett* Named Plaintiffs, and the putative class members, including by interviewing Named Plaintiffs and class members; reviewing court documents and other court records and data; making and reviewing the results of a request under New York's Freedom of Information Law; conducting extensive legal research; conducting a detailed review of previous litigation against Defendants; drafting this and the *Burkett* complaints; and zealously litigating the *Burkett* matter. Ranucci Decl. ¶ 66. NYLAG's extensive work and extensive experience support appointment here.

### III.    Class Certification is Appropriate Now

Certification of the Opposition Claims Class is appropriate at this stage of litigation. First and critically, Plaintiffs have met their burden to establish the Rule 23(a), 23(b)(2), and 23(b)(3) criteria without formal discovery, through extensive analysis of public documents, interviews with Class Members, and review of the records (including deposition transcripts) of prior litigation. This is a far cry from a "placeholder" motion made with no evidentiary basis. *See, e.g.*, *Gorss Motels, Inc. v. Cetis, Inc.*, No. 16 Civ. 1368(RNC), 2017 WL 4856866, at *2 (D. Conn. Feb. 20, 2017).

Second, granting class certification early (and liberally) is consistent with the commands of Rule 23. *See* Fed. R. Civ. P. 23(c)(1)(A) (certification should be at "early practicable time");

---

[6] *See also, e.g.*, *Quero v. DeVos*, No. 18 Civ. 9509 (GBD) (S.D.N.Y), ECF No. 45 (Dec. 17, 2019) (appointing NYLAG Class Counsel for settlement class of low-income student loan borrowers); *Flores v. Technical Career Institutes, Inc.*, Adv. Proceeding No. 18-01554 (MKV), ECF No. 25 (Aug. 24, 2018) (appointing NYLAG Class Counsel for class of low-income New York City consumers in fraud action against for-profit college); *Salazar v. DeVos*, No. 14 Civ. 1230 (RWS) (S.D.N.Y.), ECF No. 72 (Aug. 9, 2018) (appointing NYLAG Class Counsel for settlement class comprising over 60,000 low-income student loan borrowers).

*China Agritech*, 138 S. Ct. at 1807 (certification "early on"); 7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1785.3 (3d ed. 2019) ("certification decision should be made promptly," including "at an early stage"); *In re AMF Bowling Sec. Litig.*, No. 99 Civ. 3023(DC), 2002 WL 461513, at *3 (S.D.N.Y. Mar. 26, 2002) ("liberal consideration of the requirements for class certification is permitted in the early stages of litigation" (citing *Woe by Woe v. Cuomo,* 729 F.2d 96, 107 (2d Cir. 1984)).

Third, certifying the Opposition Claims Class will move this litigation forward most efficiently. It will focus issues for discovery and narrow the scope of document demands and depositions. Even though *Burkett*, the predecessor to this action, was filed nine months ago, the parties have not exchanged any discovery, in either *Burkett* or this action. Certification now will materially advance the case and ensure that discovery is conducted expeditiously when it occurs. Following discovery, Plaintiffs may move to certify an additional Execution Claims Class, if appropriate. Alternatively, Plaintiffs may seek a finding of liability on all three claims alleged in the Complaint (under the FDCPA, N.Y. GB.L. § 349, and N.Y. Jud. Law § 487) for the Opposition Claims Class only.

Fourth, class certification may facilitate a class-wide resolution of the Class Members' Claims, rather than the piecemeal resolution of individual plaintiffs' claims that has resulted from Defendants' serial offers under Rule 68 in the *Burkett* action. *See McDowall v. Cogan*, 216 F.R.D. 46, 51–52 (E.D.N.Y. 2003) (Rule 68 offers often "circumvent . . . the class action mechanism" (quotation omitted)).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court certify the proposed Opposition Claims Class set forth above pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3); name Jenifer Dupres, William Soto, Domingo Tolentino, and Luis

Viruet as the class representatives; and name the New York Legal Assistance Group class

counsel pursuant to Federal Rule of Civil Procedure 23(g).

In the alternative, if the Court determines that Plaintiffs have not established all relevant

criteria, Plaintiffs respectfully request that the Court hold this motion in abeyance and order

expedited, tailored discovery on the limited issues relevant to class certification.


Dated:  New York, New York
        January 23, 2020

                                        Respectfully submitted,

                                        /s/ Danielle F. Tarantolo

                                        Danielle Tarantolo
                                        Jane Greengold Stevens
                                        Jessica Ranucci
                                        NEW YORK LEGAL ASSISTANCE GROUP
                                        7 Hanover Square
                                        New York, NY 10004
                                        (212) 613-5000
                                        dtarantolo@nylag.org

                                        *Counsel for Plaintiffs*

25