UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JENIFER DUPRES, WILLIAM SOTO,
DOMINGO TOLENTINO, and LUIS VIRUET,
individually and on behalf of all persons
similarly situated,

                 Case No. 1:19-cv-6691 (LDH)(SJB)

               Plaintiffs,

   -against-

HOUSLANGER & ASSOCIATES, PLLC,
TODD HOUSLANGER, and BRYAN BRYKS,

               Defendants.
------------------------------------------------------------X

# DEFENDANTS HOUSLANGER & ASSOCIATES, PLLC, TODD HOUSLANGER AND BRYAN BRYKS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23

**KAUFMAN DOLOWICH & VOLUCK, LLP**
*Attorneys for Defendants*
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
T: (516) 681-1100
E: BScher@kdvlaw.com

**Of Counsel:  Brett A. Scher**
                 **Graeme E. Hogan**

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION/PRELIMINARY STATEMENT ................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ............................................ 3

III.  LEGAL ARGUMENT ................................................................................. 9

  A.  Plaintiffs Fail to Satisfy the Requirements of Fed. R. Civ. P. 23 .................... 11

    1.  Plaintiffs Fail to Meet the Requirement of Fed. R. Civ. P. 23(a) ................ 11

      a.  Plaintiffs Fail to Establish Numerosity Under Rule 23(a)(1) ............... 12

      b.  Plaintiffs Fail to Prove Commonality Under Rule 23(a)(2) ................. 14

      c.  Plaintiffs Fail to Demonstrate Typicality Under Rule 23(a)(3) ............. 17

    2.  Plaintiffs Fail to Establish that the Proposed Class
Meets the Requirements Under Fed. R. Civ. P 23(b) ................................. 19

      a.  Class Certification is Improper Because Questions
Affecting Individual Members Predominate ....................................... 20

      b.  Class certification is Improper Because it is not the Superior
Method Available to Adjudicate the Matter. ....................................... 23

      c.  Plaintiffs Fail to Establish that the Proposed Class Meets the
Requirements Under Federal Rule of Civil Procedure 23(b)(2) ............ 24

IV.  CONCLUSION .......................................................................................... 25

# TABLE OF AUTHORITIES

| Cases | Pages |
|---|---|
| *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997) | 12, 21 |
| *Annunziato v. Collecto, Inc.,* 293 F.R.D. 329 (E.D.N.Y. 2013) | 13 |
| *Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81 (S.D.N.Y. 2001) | 26 |
| *Attenborough v. Constr. & Gen. Bldg. Laborers' Local 238* F.R.D. 82 (S.D.N.Y. 2006) | 19 |
| *Bakalar v. Vavra,* 237 F.R.D. 59 (S.D.N.Y. 2006) | 19 |
| *Benzemann v. Houslanger & Assocs. PLLC* PLLC, 924 F.3d 73 (2d Cir. 2019) | 20 |
| *Bolanos v. Norwegian Cruise Lines Limited,* 212 F.R.D. 144 (S.D.N.Y. 2002) | 26 |
| *Bolin v. Sears Roebuck & Co.,* 231 F.3d 970 (5th Cir. 2000) | 21 |
| *Caridad v. Metro-N. Commuter R.R.,* 191 F.3d 283 (2d Cir. 1999) | 10, 18 |
| *Comcast Corp. v. Behrend,* 569 U.S. 27 (2013. | 10 |
| *Danvers Motor Co. v. Ford Motor Co.,* 543 F.3d 141 (3d Cir 2008) | 20 |
| *Digital Music Antitrust Litig.,* 321 F.R.D. 64 (S.D.N.Y 2017) | 24 |
| *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555 (2d Cir. 1968) | 26 |
| *Flag Telecom Holdings, Ltd. Sec. Litig.,* 574 F.3d 29 (2d Cir. 2009) | 11 |
| *Flores v. Anjost Corp.,* 284 F.R.D. 112 (S.D.N.Y. June 19, 2012) | 13 |

*Gabriele v. Am. Home Mortg. Servicing, Inc.,* ................................................... 2
503 Fed. Appx. 89 (2d Cir. 2012)

*General Tel. Co. v. Falcon,* ................................................................................. 10
457 U.S. 147 (1982)

*Heerwagen v. Clear Channel Communs.,* ........................................................... 11
435 F.3d 219 (2d Cir. 2006)

*Hydrogen Peroxide Antitrust Litig.,* .................................................................. 21
552 F.3d 305 (3d Cir. 2008)

*In Pub. Offering Sec. Litig.,* .............................................................................. 10
471 F.3d 24 (2d Cir. 2006)

*Warfarin Sodium Antitrust Litig.,* ..................................................................... 25
391 F.3d 516 (3d Cir. 2004)

*Kropelnicki v. Siegel,* ........................................................................................... 2
290 F.3d 118 (2d Cir. 2002)

*Marisol A. v. Giuliani,* ........................................................................................ 18
126 F.3d 372 (2d Cir. 1997)

*Monaco v. Stone,* ................................................................................................. 19
187 F.R.D. 50 (E.D.N.Y. 1999)

*Nassau County Strip Search Cases* ..................................................................... 21
461 F.3d 219 (2d Cir. 2006)

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* ................................... 25
259 F.3d 154 (3d Cir. 2001)

*Noble v. 93 University Place Corp.,* ............................................................... 18-19
224 F.R.D. 330 (S.D.N.Y. 2004)

*Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., Inc.,* ....................... 13
772 F.3d 111 (2d Cir. 2014)

*Perez v. Central Credit Services, LLC* ................................................................. 1
2018 WL 1135554 (E.D.N.Y. February 27, 2018)

*Robinson v. Metro-North Commuter R.R. Co.,* ................................................... 26
267 F.3d 147 (2d Cir. 2001)

*Simmons v. Roundup Funding, LLC* ..................................................................... 2
622 F.3d 93 (2d Cir. 2010)

*Sykes v. Mel S. Harris & Associates LLC*, ................................................................. *passim*
285 F.R.D. 279 (S.D.N.Y. 2012)

*Sykes v. Mel S. Harris & Associates, LLC*, ................................................................. *passim*
780 F.3d 70 (2d. Cir. 2015)

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, ........................ *10-11*
546 F.3d 196 (2d. Cir. 2008)

*Vengurlekar v. Silverline Techs.*, ................................................................. *12, 21*
220 F.R.D. 222 (S.D.N.Y. 2006)

*Visa Check/Mastermoney Antitrust Litig.*, ................................................................. *21*
280 F.3d 124 (2d Cir. 2001)

*Wal-Mart Stores, Inc. v. Dukes*, ................................................................. *1, 10, 16, 26*
564 U.S. 338 (2011)

*Warfarin Sodium Antitrust Litig.*, ................................................................. *27*
391 F.3d 516, 533-34 (3d Cir. 2004)

## Rules & Statutes

*Fed. R. Civ. P. Rule 23* ................................................................. *passim*

*N.Y. G.B.L. § 349* ................................................................. *3, 6*

*N.Y. Judiciary Law § 487* ................................................................. *3, 6*

*N.Y. C.P.L.R. 211(b).* ................................................................. *5, 18*

*N.Y. C.P.L.R. 3215.* ................................................................. *3, 7*

Defendants Houslanger & Associates, PLLC, Todd Houslanger ("Houslanger") and Bryan Bryks ("Bryks") (collective "Defendants") through their undersigned counsel, respectfully oppose Plaintiffs' Motion for Class Certification Pursuant to Fed. R. Civ. P. 23.

## I. INTRODUCTION/PRELIMINARY STATEMENT

Plaintiffs' grossly premature attempt to seek class certification is fundamentally flawed in nearly every way. Certifying a class is a rigorous process which requires a plaintiff to satisfy each prong of Rule 23. Failure to do so dictates a denial of class certification. As explained throughout, Plaintiffs do not meet their burden in any respect.

Initially, Plaintiffs seem to think that they can meet their burden for class-certification simply by telling the Court to believe what they say and ignoring the fact that the very claims Plaintiff assert are *per se* violations of the FDCPA and the basis for certifying their ill-conceived class, are anything but that. It appears that Plaintiffs have confused the liberal pleading standard with the rigorous Rule 23 analysis that this Court is required to undergo when determining whether class certification is appropriate. Plaintiffs' tactic of filing a motion for class certification at the inception of their case is something that has been frowned upon by the courts within the Second Circuit for years.[1] There can be no debate that Plaintiffs have failed to **engage in any discovery whatsoever** and instead rely on **conclusory factual allegations and pronouncements of law by their counsel** and citations to deposition testimony – **from another case** – which they twist out of context to purportedly support those conclusory statements.

The simple fact is that this motion is premature and misguided. As discussed below, Plaintiffs filed this motion for class certification before Defendants were even required to respond to the

---

[1] *See e.g. Perez v. Central Credit Services*, LLC, 2018 WL 1135554 (E.D.N.Y. February 27, 2018) ("In the instant case, the Court is unable to conduct the 'rigorous analysis' required by Wal-Mart Stores, Inc. [v. Dukes, 564 U.S. 338 (2011)] as this motion was filed contemporaneously with the class action complaint and prior to any discovery or the filing of an answer.")

Complaint. Defendants have filed their request for a pre-motion conference with respect to their anticipated motion to dismiss detailing the multiple legal deficiencies in Plaintiffs' entire case, let alone its purported grounds for proceeding as a class. In response, Plaintiffs failed to withdraw this ill-conceived motion. As a threshold matter, Plaintiffs' FDCPA claims are barred by the fact they had legal representation at the time that Defendants filed opposition to the Motions to Vacate that are at the heart of Plaintiffs' claims. (Compl. at ¶¶ 173, 235, 268, 307). Where an attorney is interposed as an intermediary between a debt collector and a consumer, [the court] assume[s] the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior." *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 Fed. Appx. 89, 95 (2d Cir. 2012) (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002)). Moreover, the FDCPA's purpose "is not implicated when a debtor is already protected by the court system and its officers." *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010) (citation omitted); *Gabriele*, 503 Fed. Appx. at 96, n.1. Plaintiffs' issues with language in Defendants' opposition to Plaintiffs' Motions to Vacate the default judgments against them (i.e., Defendants' statement upon information and belief that service upon Plaintiffs a decade prior was presumptively proper) was a straightforward issue that Civil Court was more than capable of protecting Plaintiffs from any purported deception. Finally, a determination from the Court on the threshold issues of whether Plaintiffs have alleged plausible claims of a violation of the FDCPA, NY GBL 349 or Judiciary Law 487 must precede class certification.[2]

Moreover, procedural and discovery issues aside, Plaintiffs' claims abound with the type of individual examination and analysis that simply cannot give rise to class-action litigation under Rule 23 (a) and (b).

---

[2] The Court is respectfully referred to Defendants' pre-motion conference request for a recitation of the general grounds upon which they intend to argue for dismissal of Plaintiffs' Complaint.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs commenced this lawsuit with the filing of a Complaint on November 26, 2019 with claims against Defendants alleging, *inter alia*, that it is a violation of not only the FDCPA, but also N.Y. G.B.L. § 349 and N.Y. Judiciary Law § 487, for an attorney who seeks to enforce a valid and enforceable judgment to interpose any form of opposition to a judgment-debtor's motion to vacate such a judgment.  In essence, Plaintiffs argue that Defendants were obligated to, upon receipt of Plaintiffs' motions to vacate, walk away and abandon their clients' duly-recorded judgments against Plaintiffs.  Plaintiffs assert that Defendants made false and misleading statements in their opposition to the motions to vacate filed by Plaintiffs (notably, years after the judgments had been entered against Plaintiffs).

Defendants completed a waiver of service which gave them until January 27, 2020 to file their responsive pleading or motion.  (ECF Doc. No. 11).  On January 23, 2020, before Defendants' time to respond to the Complaint had even run, Plaintiffs filed their motion to certify a class. (ECF Doc. No. 12).  On January 27, 2020 (and as revised on January 29, 2020), Defendants filed a pre-motion conference request with respect to their anticipated Fed. R. Civ. P. 12(b) motion which goes to the very heart of the claims that Plaintiffs seek to use as the anchor of their class certification motion. (ECF Doc No. 19).  As set forth in Defendants' pre-motion letter, the only representations made by Defendants in their opposition to the motions to vacate were that based upon the fact that judgment had been entered against each Plaintiff by the New York City Civil Court pursuant to CPLR 3215, service of the underlying complaints leading to those judgments (which was handled by a completely different law firm than Defendants) was upon information and belief – valid.

Moreover, Plaintiffs allege that Defendants unduly prolonged legal proceedings by requiring Class Members to appear at "unnecessary" court dates, relying on conclusory assertions **from their counsel**, that any adjournments or additional court dates were caused be Defendants.  The gist of the

claims in this action is that any law firm or judgment creditor must simply lay down and give up the second a judgment debtor files a motion to vacate a default judgment entered against them. Indeed, according to Plaintiffs, the mere act of attending court dates gives rise to liability. As explained throughout, even assuming *arguendo* that Plaintiffs' claims had any merit, they are simply not the type of claims that are suitable for class action litigation under the Federal Rules of Civil Procedure.

Notably, this action is really the third iteration of Plaintiffs' counsel's attempt to bring class action claims against Defendants. Plaintiffs' counsel originally brought identical claims on behalf of other named plaintiffs. *See Burkett v. Houslanger & Associates et al.*, 19-cv-2285 (LDH)(JO) ("*Burkett*"). Upon the acceptance of Rule 68 Offers of Judgment in *Burkett*, all plaintiffs in that action had judgments entered in their favor. Their cases are over. Plaintiffs then attempted to file yet another amended complaint as part of the *Burkett* action and that motion was denied. Counsel then filed the present case with another four named Plaintiffs.

This ill-conceived motion for class certification must be denied. Plaintiffs have not engaged in any discovery whatsoever. Instead, Plaintiffs' motion is based upon an attorney declaration filled with conclusory statements unsupported by evidence. *See generally* Ranucci Declaration in Support of Plaintiffs' Motion for Class Certification (ECF Doc. No. 14) (hereinafter "Ranucci Declaration"). The Motion seeks to certify an amorphous and untenable "Opposition Claims Class" which consists of:

> All individuals against whom Defendants issue (or will issue) executions on a judgment obtained in New York City Civil Court on behalf of a judgment creditor that did not originally obtain the judgment; who filed (or will file) a Motion to Vacate that judgment; and against whom Defendants filed and/or served (or will file and/or serve) an Opposition to the Motion that does not contain the Affidavit of Service ("Class Members")

(ECF Doc. No. 13 at p. 12).

As explained above, the "Opposition Claims Class" essentially has a two-fold grievance, each addressed in turn below. First, Plaintiffs claim that Defendants "follow uniform practices" in filing

4

Opposition to Motions to Vacate Judgments in New York City Civil Court cases filed by judgment-debtors (hereinafter "Civil Court Opps. to Motion to Vacate). (ECF Doc. No. 13 at p. 6). Plaintiffs claim that the Civil Court Opps. to Motion to Vacate filed by Defendants "contain boilerplate language" (ECF Doc. No. 13 at p. 7). Their counsel attaches nine supposed "representative" Civil Court Opp. to Motion to Vacate which they claim "follow the same format." (ECF Doc. No. 14-1). Plaintiffs further allege that Defendants fail to "meaningfully review" critical documentation before undertaking their efforts. (ECF Doc. No. 13 at p. 8). Plaintiffs thus assert that "because Defendants review virtually no documentation regarding the judgments, service, or their authority to enforce, the representations by Defendants in the [Civil Court Opps. to Motion to Vacate] are false and misleading, and are made without a reasonable basis and without having undertaken any investigation that could have led to a good faith belief in their truth." (Doc. 13 at p. 9). Plaintiffs' support for these claims is specious, at best, and ignores the fundamental premise that a judgment is enforceable, on its face, for 20-years after it is entered. *See* NY CPLR 211(b). There is no legal requirement that an attorney seeking to enforce a judgment investigate how that judgment came to be. *See e.g. Callender v. Forster & Garbus, LLP*, 15 Civ. 5813 (AKH), (SDNY December 5, 2017) (ECF Doc. No. 106).

Review of the "evidence" Plaintiffs provide reveals no support for their claims or their ability to abide by the requirements of Rule 23. First, of the nine "representative" cases, only four belong to the Plaintiffs at bar. The remaining "representatives" are individuals that have already accepted Offers of Judgments in *Burkett* with respect to the same claims Plaintiff purports to assert herein – they cannot be part of Plaintiffs' proposed class. Plaintiffs' attempt to extrapolate a class from these "representative" cases combined with their counsel's cursory review of court dockets where Defendants have simply filed opposition to a motion to vacate is not sufficient to satisfy the numerosity and typicality requirements. Second, Plaintiffs inaccurately cite to deposition testimony of a "Thomas Houslanger" which they argue provides support for their spurious claims. Specifically,

Plaintiffs cite to a portion of Thomas Houslanger's deposition testimony in which he testifies that the oppositions are prepared **precisely** by the attorneys to be responsive to an individual debtor's Order to Show Cause/Motion to Vacate. *See* ECF Doc No. 14-6 ("Houslanger Dep") at 129:19-130:20. Specifically, the testimony provides:

```
                                               129
18            Q.    And then she would give those
19      oppositions to the attorney who signed it.
20            A.    No, the matter would be --
21      initially, the matters are reviewed with an
22      attorney.  The points, the issues, history
23      is all pulled by Ms. Karow and consolidated
24      and -- and then the arguments that are
25      responsive to the Order to Show Cause are

                                               130
1       T. HOUSLANGER
2       drafted, and then Ms. Karow was drafted and
3       given to an attorney to review.
4             Q.    And there would be a template,
5       I assume, for a standard Order to Show
6       Cause opposition, like, the history of the
7       case, the amount of a judgement.  Would
8       there just be a general template for an
9       opposition?
10            A.    Most of the -- most of the
11      categories have language that's been
12      written before that we utilize again.
13            Q.    So the answer is yes.
14            A.    Yes, you know, I wouldn't call
15      it an template.  It's not an automatic
16      document.  It's drafted, specifically, for
17      each case.  But some of the paragraphs -- I
18      don't know want to use -- you know, we used
19      to use the word boilerplate.  We don't use
20      that anymore.
```

*Id.* at 129:19-130:20.

Similarly, a review of the nine sample oppositions that Plaintiffs attach to their Motion reveal that the oppositions themselves are not computer generated "form" documents but manually created opposition documents that contain a case specific analysis. *See* ECF Doc. No. 14-1. Each opposition relates account specific information as well as information for the Court as to when the judgment was entered and why, in that particular case, Defendants were unable, under the circumstances, to obtain the original affidavit of service from the New York City Civil Court file demonstrating that service was proper – almost a decade prior to Plaintiffs' attempt to vacate those Judgments. *Id.* The oppositions contain numerous case specific items, including but not limited to account names, account numbers, as well as information on Accurint searches conducted on Plaintiffs and their addresses. *Id.* Additionally, the legal arguments vary depending upon what the judgment debtors include in their motions to vacate. *Id.*

Plaintiffs' own "evidence" belies any allegation that there is anything "boilerplate" about the Civil Court Opp. to Motion to Vacate. The "similar" language that Plaintiffs really seem to take issue with is Defendants' statement that "[u]pon information and belief the Defendant was properly served in this matter and the Court has obtained jurisdiction over the subject matter as well as the Defendant . . ." *See generally* Plaintiffs' Exhibit A1-A9. This statement, however, **is entirely truthful and, in fact recognizes the reality that the State of New York, as matter of law, also deemed that service was properly made upon each of the Plaintiffs in their respective Civil Court actions, and hence, the Judgments were valid on their face**. This is because, New York law expressly requires any motion for a default judgment be accompanied by (1) "proof of service of the summons and the complaint" and (2) "proof of the facts constituting the claim, the default and the amount due by affidavit made by the party. . . ." N.Y. C.P.L.R. 3215. Plaintiffs' argument - that Defendants should have presumed the exact opposite of what the law provides – that service was never made upon Plaintiffs and that the Civil Court had entered Judgment against each Plaintiff improperly and without requiring an affidavit of service – is simply untenable.

Plaintiffs next suggest that the Defendants filing of the Civil Court Opp. to Motion to Vacate "without an affidavit of service has the effect of prolonging the legal proceedings against Class Members." (ECF Doc. No. 13 at p. 9). Astoundingly, Plaintiffs support for this statement is found entirely in Plaintiffs' counsel's declaration, which purports to describe "general practices of the consumer credit part of New York City Civil Court, which is the court part in which the majority of debt collection cases are heard and the part in which VLFD [Volunteer Lawyer For the Day] operates." Ranucci Declaration at ¶43. Based solely on Ranucci's statements, Plaintiffs claim that "[u]nder standard court practice, most Class Members cases are adjourned for a second court date at least ten weeks after the first, **to allow time for the court file, which contains the affidavit of service, to become available.**" (ECF Doc. No. 13 at p. 9-10) (emphasis added). Thus, Plaintiffs'

counsel acknowledges that, in essence, it is the inherent delay in waiting for a court file to come from archives (as all of Plaintiffs' Motions to Vacate were served **over a decade after** the Civil Court entered judgment against them) but then still attempts to impose liability on Defendants for the delay. All of the Civil Court Opps. to Motion to Vacate filed by Defendants expressly advised the Civil Court in sum and substance that the affidavits of service from 10+ years ago were:

> "unavailable to be attached to [the] opposition due to the antiquity of the matter and the short return time that the Court allowed us, which was inadequate to retrieve and eleven (11) year old archived file."

(ECF Doc. No. 14-1, pp. 3-4). The reason the file was not available is because Plaintiffs waited so long to move to vacate the judgments against them. Defendants have absolutely no control over the filing system maintained by the NY City Civil Court. As judges and court policies often require the matter to be adjourned in order to obtain the court file. Likewise, it is also noteworthy to mention that the stay of execution on the Judgment is imposed once on the Order to Show Cause is signed.

Plaintiffs' further claim that "[s]ince the Class Member only sees the affidavit of service for the first time at that second court date, **standard court practice** is to adjourn again, for a third court date, to allow the Class Member to prepare a written response," is nothing more than conjecture by Plaintiffs' counsel (ECF Doc. 13 at p. 10) (emphasis added). Notably, not one Plaintiff attests in their supporting declarations that Defendants demanded or even requested that the hearing date on the motion to vacate be adjourned. *See e.g.* Declaration of Jennifer Dupres (ECF Doc. No. 14-2) (Merely stating "I had to attend two more court dates for my motion."); Declaration of Willian Soto (ECF Doc. No. 14-3) (Merely stating "I had to attend two more court dates for my Motion."); Declaration of Domingo Tolentino (ECF Doc. No. 14-4) (Merely stating "I had to attend four more court dates for my Motion" and "[t]he judge scheduled a sixth court date."); Declaration of Luis Viruet (ECF Doc. No. 14-5) (Merely stating "I had to attend two more court dates for my Motion.") To be clear, Plaintiffs' argument here – based on counsel's unsupported conclusory statement - is that "standard

court practice" is to adjourn, for the benefit of Plaintiffs but that Defendants should be liable for this "delay." Plaintiffs next assert that once "a class member is finally able to view the affidavit of service, it is **often** plain that service is improper."[3] (ECF Doc. No. 13 at p. 10). Plaintiffs then claim that "Defendants further prolong the legal proceedings against Class Members by continuing to baselessly oppose their Motions at subsequent court dates, including, in some cases, even after Class Members present documentary evidence that the judgments on which Defendants executed were invalid." (ECF Doc. No. 13 at p. 10). The crux of Plaintiffs' argument again appears to be that Defendants should just lay down and accept any Motion to Vacate or Order to Show Cause encountered in Civil Court, despite their indisputably being a duly-entered Judgment that has been public record for over a decade.

As described throughout, Plaintiffs' allegations do not give rise to liability under the FDCPA, GBL, or the Judiciary Law. Just as importantly for the issue presently before the Court, Plaintiffs' claims all revolve around highly particularized and individualized issues which, even if Plaintiffs could prove were improper, would require the Court to examine the facts and circumstances of individual Class Members. As such, Plaintiffs are entirely unable to abide by Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").

## III. LEGAL ARGUMENT

A class action is "an exception to the usual rule that litigation is conduct by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Any plaintiff moving for class certification under Rule 23 must demonstrate all of the requirements of Rule 23(a) and one of the three categories of Rule 23(b*)*. In *re Initial Pub. Offerings Sec. Litig.*, 471 F. 3d 24, 33 (2d. Cir. 2006). Specifically, Plaintiffs bear the burden of establishing, through a preponderance

---

[3] Defendants are left to wonder what "often" means in the context of Plaintiffs' conclusory statement. What is clear, however, and as will be discussed throughout, this sentence again lends itself to the determination that individual issues predominate and nothing about these claims can be determined with one swipe of a judicial brush.

of evidence that all of the requirements for a class action under Rule 23(a), commonality, typicality, numerosity, and adequacy of representation, have been satisfied through evidence and not through unfounded allegations. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d. Cir. 2008); *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999); Fed. R. Civ. P. 23(a).

To fit squarely in the exception and establish a class action, the party asserting the class action "must affirmatively demonstrate his compliance" with Federal Rule of Procedure 23. *Behrend*, 569 U.S. at 33 (citing *Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Furthermore, "[t]he Rule 'does not set forth a mere pleading standard,'" instead, "a party must not only 'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a). *Id.* Additionally, a party is required to satisfy one of the Rule 23(b) provisions, in this case the party must prove Rule 23(b)(3), "which requires a court to find that 'the questions of law or fact common to class members predominate over any questions affecting only individual members.'" *Id.*

The Second Circuit has set forth the following guidelines regarding class certification:

(1) [A] district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met;

(2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met;

(3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; [and]

(4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement . . . .

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 34 (2d Cir. 2009) (*quoting In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006)). A proponent of class certification must

meet the Rule 23 requirements by a "'preponderance of the evidence.'" *Id. (quoting Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008)).

In addition to the elements of Rule 23(a), Plaintiffs must also satisfy one of the elements of Rule 23(b). *Heerwagen v. Clear Channel Communs.*, 435 F.3d 219, 225-26 (2d Cir. 2006). Plaintiffs have chosen to move for certification under both Rule 23(b)(2) and 23(b)(3). Rule 23(b)(3), requires them to show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id. (quoting* Fed. R. Civ. P. 23(b)(3)). Plaintiffs bear the burden of establishing **each** requirement for class certification. *Vengurlekar v. Silverline Techs.*, 220 F.R.D. 222, 226 (S.D.N.Y. 2006)(emphasis added).

As set forth below, Plaintiffs have failed to demonstrate that they have commonality, typicality, or numerosity as required by Rule 23(a). Furthermore, the Plaintiffs have failed to prove predominance or that class representation is superior to other available methods for adjudicating this matter. Finally, the Plaintiffs cannot demonstrate that injunctive relief is appropriate under Rule 23(b)(2). Accordingly, the Plaintiffs' Motion should be denied in its entirety.

## A. Plaintiffs Fail to Satisfy the Requirements of Fed. R. Civ. P. 23

### 1. Plaintiffs Fail to Meet the Requirement of Fed R. Civ. P. 23(a)

Plaintiffs are unable to satisfy the requirements of Rule 23(a). In order to certify a class, the party seeking class certification must satisfy the following four requirements of Rule 23(a):

(1) The class is so numerous that joinder of all members is impracticable [numerosity];
(2) There are questions of law or fact common to the class [commonality];

(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and

(4) The representative parties will fairly and adequately protect the interests of the class [adequacy].

*See* Fed. R. Civ. P. 23(a). The party seeking class certification bears the burden of establishing by a **preponderance of the evidence** that each of the requirements of Rule 23 has been met. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) (emphasis added). A class may be certified only if the court "is satisfied, after rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Sykes v. Mel S. Harris & Associates, LLC*, 780 F.3d 70 (2d. Cir. 2015).

### a. Plaintiffs Fail to Establish Numerosity Under Rule 23(a)(1)

Fed. R. Civ. P. 23(a)(1) requires a class to be "so numerous that joinder of all members is impracticable." "Numerosity is presumed for classes larger than forty members." *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 120 (2d Cir. 2014). "While 'evidence of exact size or identity of class members is not required,' a plaintiff cannot rely on 'pure speculation or bare allegations' in order to demonstrate numerosity." *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 335 (E.D.N.Y. 2013) (quoting *Flores v. Anjost Corp.*, No. 11 Civ. 1531 (CM), 284 F.R.D. 112, 123 (S.D.N.Y. June 19, 2012)).

In their Motion, Plaintiffs claim that "Plaintiffs' proposed class easily meets the numerosity requirement." (ECF Doc. No. 13 at p. 13). In support of this claim, Plaintiffs cite to deposition testimony from Houslanger and Bryks **from another case** where Houslanger **"guesstimate[d]"** in general the number of motions to vacate that Defendants opposed in cases where a default judgment had been entered -- regardless of whether it involved issues like the case here where the judgment was entered by another law firm or involved judgments that had been entered over a decade previously. (ECF Doc. No. 14-6, pp. 242-244). Likewise, Bryks merely testified that he estimated that he drafted oppositions to approximately **5 "oppositions to orders to show cause," in a month** – nothing more and certainly nothing at the level needed to establish numerosity of Plaintiffs' proposed class. *Id.*; ECF Doc. No. 14-7, pp. 88-91.

12

Plaintiffs then attempt to improperly bootstrap their argument with "testimony" from their own attorney, who claims that she "has reviewed state court records . . . which show that between October 2019 and January 2020 . . . Defendants had or have scheduled court dates on Motions to Vacate filed by at least seventy-four consumers." (Doc. 13 at p. 13, *citing* Ranucci Decl. ¶¶31-32). Every one of these statements, however, only touches generally on Defendants' handling of Motions to Vacate in **general** and not the proposed class they have sought to certify:

> "All individuals against whom Defendants issue (or will issue) executions on a judgment obtained in New York City Civil Court on behalf of a judgment creditor that did not originally obtain the judgment; who filed (or will file) a Motion to Vacate that judgment; and against whom Defendants filed and/or served (or will file and/or serve) an Opposition to the Motion that does not contain the Affidavit of Service ("Class Members")."

Plaintiffs' counsel then indicates that they have reviewed twenty Civil Court Opps. to Motion to Vacate with respect to 19 potential class members. Ranucci Decl. ¶¶ 8-9. Then, they concede of the 19, only 4 are the plaintiffs in this case and 4 are plaintiffs that accepted Offers of Judgment in *Burkett* (discussed above) and, thus, not potential plaintiffs in this case. *Id.* Then counsel surmises that based upon her "experience, approximately two-thirds of consumers who filed Motions to Vacate litigated by [Defendants] are Class Members. . ." *Id.* at 34. This number is purportedly based upon her "office's review of case files of twenty-eight [unnamed] consumers." *Id.* at 35. Based upon this estimate, counsel then estimates that Houslanger opposes motions to vacates by 120-240 putative class members per year. *Id.* at 36. It is obvious that Plaintiffs are playing a number games here – on an issue critical to the certification of a class. Indeed, Plaintiffs failed to produce any evidence whatsoever that they can establish numerosity. Plaintiffs cannot, and indeed do not, point to any evidence that their purported class size is anything more than the 4 plaintiffs named in this lawsuit. Instead, Plaintiffs rely on the type of bare allegations and speculation that do not pass muster under a Rule 23 analysis. As such, Plaintiffs fail to establish the numerosity requirement under Rule 23(a)(1).

In addition, Plaintiffs argue that the "financial resources" of the class members should be considered as part of the numerosity inquiry and that the proposed class is made up of "low-income individuals who, absent this class action, would likely be without effective strength to bring their opponents into court at all." (Doc. 13 at p. 14). This statement is, like nearly all of the assertions made by Plaintiffs in their Motions, completely unsupported by any evidence whatsoever. Indeed, while Plaintiffs' Counsel's Declaration provides a statement regarding the monetary earnings of "consumers represented by NYLAG through VLFD," there is no evidence to suggest that any class members – much less all class members – are represented by the New York Legal Aid Group through counsel's Volunteer Lawyer for a Day program. Likewise, each Plaintiff's declaration in support of class certification is noticeably silent on the issue of their "financial resources." ECF Doc. Nos. 14-2, 14-2, 14-3, 14-4.

### b.  Plaintiffs Fail to Prove Commonality Under Rule 23(a)(2)

Under Rule 23(a)(2), to demonstrate commonality, the Plaintiff must show "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Additionally, to satisfy the commonality requirement, the alleged class's claims must depend upon a common contention. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011). Moreover, the common contention "must be capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims *in one stroke*. *Id.* at 2551. (emphasis added).

Here, Plaintiffs again miss the mark. While there may be some common questions amongst individuals who received the Civil Court Opps. to Motion to Vacate, the resolution of issues central to the claims absolutely cannot be done in one stroke. Plaintiffs desperately try to fit this case – a proverbial square peg – into the "round hole" holding of *Sykes v. Mel S. Harris & Associates LLC*, 285 F.R.D. 279 (S.D.N.Y. ), *aff'd Sykes v. Mel S. Harris & Associates, LLC*, 780 F.3d 70 (2d. Cir.

2015)(Sykes I and Sykes II). Of critical importance, the Sykes class certification decision followed **four** years of discovery. Moreover, this case is factually and legally distinguishable on multiple grounds.

In *Sykes*, the plaintiffs alleged that the defendant law firm and its debt buyer client (which principals of the law firm held an ownership interest in) "entered into joint ventures to purchase debt portfolios, and then filed debt collection actions against the alleged debtors with the intent to collect millions of dollars through fraudulently-obtained default judgments." *Sykes I*, 285 F.R.D. at 283. The defendants would allegedly apply for default judgments after attaching affidavits of merit which would attest to their personal knowledge regarding the debt and an ostensibly fraudulent affidavit of service of proof of service. *Id.* The law firm defendants created affidavits of merit in support motions for default judgment which stated that the affiant had personal knowledge of the debt at issue even though the affiant was not in possession of the business records needed to make such a representation. *Id.* at 285. The court in *Sykes* found that the plaintiffs satisfied commonality because the "overarching claim is that defendants systematically filed false affidavits of merit and, in many instances, false affidavits of service to fraudulently procure default judgments in New York City Civil Court." *Id.* at p. 290. Thus, the *Sykes* court determined, that there was a unifying thread of the defendants' alleged procurement of default judgments. *See Id.* The court further held that "with respect to the affidavits of merit, there is a central issue as to the veracity of the affiant's uniform statement of "personal knowledge" of the underlying debt when, in fact, defendants' computer systems automatically generate the affidavits and the affiant signs as many as 50 at a time, performing a 'quality check' on one and not reviewing the remaining 49." *Id.* The court determined that addressing the common question of whether the conduct at issue gave rise to liability on a class-wide basis would provide common answers to each putative class member's claim and would "drive the resolution of the litigation." *Id.*

Unlike in *Sykes*, here the questions that the Court must ultimately answer cannot be resolved in one simple stroke. In this case, Defendants had absolutely nothing to do with the procurement of the Judgments against Plaintiffs and made no claim of personal knowledge regarding the merits of the debt collection lawsuits that lead to the Judgments nor did they claim to have personal knowledge of how service was effectuated in the underlying claim. Indeed, as Plaintiffs readily admit Defendants stated "upon information and belief" that service was presumptively valid given **that the judgments existed as of record for over a decade**. Plaintiff tries to paint this case in the same light as *Sykes* when they are truly nothing alike.

At bar, Plaintiffs claim that once "a class member is finally able to view the affidavit of service, it is **often** plain that service is improper." (ECF Doc. No. 13 at p. 10) (emphasis added). Plaintiffs do not give any further elucidation as to what "often" or "plain" means. Crucially, however, Plaintiffs do not allege that "it is **always** plain that service is improper." That is because, **at an absolute minimum,** even in Plaintiff's tiny prospective universe of potential class members, any factual inquiry as to the validity of service and of the judgment itself will necessarily differ from person to person and is not a "common" thread that can be answered by one broad stroke of the Court's pen.

Similarly, Plaintiffs allegations regarding Defendants' "prolonging the litigation" by "forcing" class members to attend court dates are highly individualized and do not contain a "common" thread. Specifically, Plaintiffs allege that their review indicates that potential class members attended anywhere from 1 to 6 court dates. Ranucci Declaration at ¶ 37. As discussed above, Plaintiffs' motion is silent as to the "cause" of the cause of the multiple court appearance, other than counsel's surmise. Not one Plaintiff's declaration alleges that Defendants demanded or even requested that the hearing date on the Motions to Vacate be adjourned. *See e.g.* Declaration of

Jennifer Dupres (ECF Doc. No. 14-2); Declaration of Willian Soto (ECF Doc. No. 14-3); Declaration of Domingo Tolentino (ECF Doc. No. 14-4); Declaration of Luis Viruet (ECF Doc. No. 14-5).

Assuming, *arguendo*, that Plaintiffs' erroneous claims of having to appear on multiple dates on **their** Motions to Vacate the for-decades-undisturbed Judgments against them did give rise to liability, an individualized analysis would be required to determine if and at what point Defendants were "needlessly prolonging the litigation." Is there a finding of liability only upon the third court date? What if the court dates were extended because the judgment debtor requested or the Court ordered the continuance? What if service was ultimately proven and the State Court upheld the judgment? These determinations could only take place after an individual review as to the circumstances involved in the court dates attended by Defendants and the potential class members.

Plaintiffs are unable to demonstrate common questions of law or fact and, as such, have failed to satisfy the commonality requirement.

### c. Plaintiffs Fail to Demonstrate Typicality Under Rule 23(a)(3)

Similarly, Plaintiffs do not meet the "typicality" requirement. To satisfy the typicality requirement, the claims or defenses of the representative party must be typical of the claims or defenses of the class. *See* Fed. R. Civ. P. 23(a)(3). Thus, typicality "requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Caridad v. Metro-N. Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999). "The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). The common question must be "at the core of the cause of action alleged," and must be susceptible to "generalized proof." *Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004); *Vengurlekar*, 220 F.R.D. at 227- 230. To defeat class certification, a defendant may "show some degree of likelihood a unique defense will play a significant role at trial." *Monaco*

*v. Stone*, 187 F.R.D. 50, 67 (E.D.N.Y 1999); *Bakalar v. Vavra*, 237 F.R.D. 59, 67-68 (S.D.N.Y. 2006).

Moreover, courts require more than self-serving affidavits and a plaintiff generally must provide either statistical or anecdotal evidence in order to demonstrate commonality and/or typicality. *Attenborough v. Constr. & Gen. Bldg. Laborers' Local*, 238 F.R.D. 82, 95 (S.D.N.Y. 2006).

While Plaintiffs barely address this mandatory requirement of Rule 23, even a cursory review of the allegations and issues reveals that **typicality cannot be established**. The same "issues of law or fact" cannot be established because they necessarily depend on individual questions regarding service as to each plaintiff and putative class member. There is no way for Plaintiffs to establish typicality because there is no way to address each of the putative class members questions with respect to service. Unlike in *Sykes*, there is no "typical" claim regarding a false or fraudulent affidavit of merit concerning the validity of the debt. Instead, there is simply a truthful statement that Defendants believed a judgment to be valid and that service was properly obtained because the Civil Court would presumably not have entered judgment without proof of service. *See* NY CPLR 3215, NY CPLR 211(b)

Moreover, there are unique defenses to the named Plaintiffs that defeat typicality in a Rule 23 analysis. First, as Plaintiffs themselves acknowledge, Dupres executed a Settlement Release long before filing the Complaint in this action which states: "Defendant, Jenifer Dupres, upon execution of this Stipulation, shall release and forever discharge . . . Houslanger & Associates, PLLC, . . . from any and all claims . . . including any and all alleged improper debt collection acts, including claims alleged to be based upon federal FDCPA and/or other New York laws which may govern the collection of debts . . . ." which serves to operate as a bar to all of her claims in this action. (Compl. at ¶¶ 133, 193-95) (Scher Decl., Ex. "A"). Moreover, all of the claims regarding Viruet occur outside of the FDCPA's one-year statute of limitations time period. *Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 78 (2d Cir. 2019). All the putative FDCPA violations asserted by Viruet occurred

before March 15, 2018, when his motion to vacate the judgment was granted in state court. (Compl. at ¶¶ 279, 311). Any FDCPA claims Viruet may have had expired at the latest in March 2019 long before the Complaint in this action was filed. Thus, two of the four representative Plaintiffs are subject to vastly different affirmative defenses, that clearly put them at odds with the remaining Plaintiffs and the putative class. Accordingly, Plaintiffs cannot satisfy the typicality requirement.

> ### 2. Plaintiffs Fail to Establish that the Proposed Class Meets the Requirements Under Fed. R. Civ. P. 23(b)

In addition to satisfying the Rule 23(a) prerequisites, Plaintiffs must qualify the proposed class under at least one of three subsection Rule 23(b) categories. Fed. R. Civ. P. 23(b). Plaintiffs seek to certify their claims under both Rule 23(b)(2) and 23(b)(3) As explained directly below, Plaintiffs fail to satisfy the rigorous analysis of Rule 23(b) under both subsections.

Under Fed. R. Civ. P. 23(b)(3), a class may only be certified if, in addition to the requirements of 23(a), "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods of fair adjudication of the controversy." Fed. R. Civ. P. 23(b); *see Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 147 (3d Cir 2008). Predominance is similar to Rule 23(a)'s requirement of commonality; however, it imposes a far more demanding inquiry into the common issues which serve as the basis for class certification. *Sykes*, 780 F.3d at 81. Additionally, with respect to predominance, "'[i]f proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable.'" *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001). In analyzing the superiority requirement, a court must address "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3)(D); *see Newton*, 259 F.3d at 191.

### a. Class Certification is Improper Because Questions Affecting Individual Members Predominate

Class certification must also be denied because "questions of law or fact common to class members" do not "predominate" over "questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). "In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (quotation omitted); accord *In re Nassau County Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006) ("[A]n issue is common to the class when it is susceptible to generalized, class-wide proof"). The 23(b)(3) predominance requirement is far more demanding that the commonality requirement of Rule 23(a). *See Vengurlekar*, 220 F.R.D. at 226. Moreover, class certification is improper "if the merits of the claim turns on the defendant's individual dealings with each plaintiff." *Bolin v. Sears Roebuck & Co.*, 231 F.3d 970, 975 (5th Cir. 2000).

In this matter, common issues of law or fact do not predominate over the individual questions that arise when analyzing Defendants' interactions with each Motion to Vacate and subsequent opposition thereto. Again, Plaintiffs argument here is misplaced. Plaintiffs claim that the "[o]pposition claims are based on the alleged illegality of standardized documents (the Civil Court Opps. to Motion to Vacate) and standardized practices (failing to meaningfully review documentation and baselessly continuing to oppose). (ECF Doc. No. 13 at p. 20).

Plaintiffs erroneously use the word "standardized" to describe Defendants' actions in an effort to analogize this case to the facts in *Sykes*. This is because Plaintiffs cite to, and want to rely on, language in the *Sykes* case that predominance was met because:

20

> Every potential class member's claim arises out of defendants' uniform, widespread practice of filing automatically-generated, form affidavits . . . **to obtain default judgments** against debtors in state court. Whether this practice violates the FDCPA . . . New York GBL § 349, [or] New York Judiciary Law § 487 . . . does not depend on individualized considerations.

*Sykes I*, 285 F.R.D. at 293; see also ECF Doc. No. 13 at p. 20) (emphasis added).

In *Sykes*, however, the "issue" in the case was the "fraudulent means that defendant employed in order to obtain" default judgments. *Sykes II*, 780 F. 3d. at 93. The "fraudulent means" involved allegations of the use of widespread form affidavits of merit concerning the nature of the debt that were allegedly used to secure the default judgments against the plaintiffs in *Sykes* that were **facially untrue and claimed to be based on personal knowledge**. Thus, the common issue to be resolved was relatively simple – whether the filing of a **facially false affidavit of merit to fraudulently obtain a default judgment** gave rise to liability.

Unlike *Sykes*, no broad stroke can resolve the individual issues in this case because there are no "form" documents with universally "untrue" statements. Here, Defendants are not alleged to have procured the Judgments at issue (they were obtained by other law firms over a decade ago) and did not and do not engage in any "uniform practice" of filling out "auto-generated" oppositions. Each opposition was drafted solely in response to the filing of a Motion to Vacate and responded to the specific timing and claims made by each Plaintiff. Moreover, **the language that Plaintiffs complain of is wholly accurate.** Crucially, unlike *Sykes*, there is no statement that Defendants' had "personal knowledge" of the debt at issue. Instead, Defendants merely stated that they believed that the decade-old judgments were valid upon **information and belief, stemming from the very fact that the judgment itself was is in effect**. Simply put, Defendants' statements cannot be characterized as deceptive or misleading.

Even following Plaintiffs' logic – that the filing of an opposition *could* be deceptive or misleading – this determination could only be made on a case by case basis after reviewing and

analyzing each individual Motion to Vacate and Opposition thereto. Plaintiffs purposely filed this motion **before** a single Plaintiff was deposed regarding their purported claims – thus Defendants (and the Court) are left to guess about their interaction with the Defendants, whether they were represented by counsel during their interactions with Defendants (thus, defeating their claims in their entirety), the reasons their motions were adjourned, etc.

Plaintiffs claim that the *Sykes* court "specifically rejected that 'individual issues related to service' would cause 'any individualized causation issues with respect to plaintiffs' claims under the FDCPA.'" (Doc. 13 at p. 20) citing *Sykes II*, 780 F.3d at 91. But Plaintiffs' case is not *Sykes*. First, as discussed above, class certification in Sykes occurred after **four years** of discovery. Second, the *Sykes* Court deemed the questions regarding service of no import to the question of certification of a class based upon defendants' widespread use of a facially untrue affidavit of merit, used **to obtain** fraudulent default judgments. Here, the "upon information and belief" statements in Defendants' Civil Court Opps. to Motion to Vacate are wholly true and accurate on their face and were not used to procure the default judgments (they had been obtained years prior by other law firms). It must be repeated that this fact alone should defeat Plaintiffs' entire theory of liability (not just class certification). Even assuming that Plaintiffs could somehow demonstrate that Defendants' statements regarding their belief as to previously-obtained judgments were untrue – this could only be done after an individualized inquiry into the facts and circumstances regarding service of the complaints leading to each of the underlying judgments, how each Plaintiff was unaware of those judgments for 10+ years, why each Plaintiff ignored the validation notices sent to them, why they did not realize that their wages or bank accounts were being garnished, and the circumstances regarding their respective Motions to Vacate, including Plaintiffs' claims that Defendants delayed the hearings on their Motions to Vacate. *See In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 92-99 (S.D.N.Y 2017) (denying class certification where evidence demonstrated that certain class members could be subject to unique

defenses). Other questions include: Did the Civil Court vacate the Judgment for this class member? Were their adjournments of these class members' court dates? Who requested the adjournments? Were the class members represented by counsel at any point during the pendency of their Motions to Vacate? These are **individual questions that predominate** the analysis at hand. Moreover, they are questions that can only be answered by Plaintiffs and Plaintiffs' counsel as they supposedly conducted a study of potential plaintiffs but have refused to produce any of the data they supposedly looked at.

Each Plaintiffs' case and Defendants' interactions with every individual who filed a Motion to Vacate are anything but "uniform." There is no "common" issue that Plaintiffs can use to tie the potential class members together. Instead, any finding of liability – which Defendants deny entirely – can only be made after an extensive review of individual facts and circumstances. Therefore, class certification is not appropriate because it fails to satisfy the Rule 23(b) predominance requirement.

### b. Class Certification is Improper Because it is not the Superior Method Available to Adjudicate the Matter

A class action must represent the best 'available method for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *see Newton*, 259 F.3d at 191. "Rule 23(b)(3)'s superiority requirement 'asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533-34 (3d Cir. 2004).

Plaintiffs fail to establish that a class action is the superior method of adjudicating the claims. Plaintiffs again try to paint the picture that the Court is dealing with "standard documents" and "nearly identical" issues in order to fit the case into the Sykes holding regarding superiority. Again, however, this case does not involve "standard" or "nearly identical" documents but requires individualized inquiry into each potential class members' facts and circumstances. Plaintiffs assert, without any evidence, that these potential class members are "low income New York consumers who lack the means to pursue individual claims." (ECF Doc. No. 13 at p. 21). Indeed, even if Plaintiffs' counsels'

unsupported statement regarding class member income were true, Plaintiffs' counsel is well aware that the FDCPA is a fee shifting statute and individual complaints are often, if not usually, brought on behalf of low income individuals who are not required to pay their attorneys hourly rates.

### c. Plaintiffs Fail to Establish that the Proposed Class Meets the Requirements Under Fed. R. Civ. P. 23(b)(2)

Rule 23(b)(2) provides that a class action may be maintained if the requirements of Rule 23(a) are satisfied and the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. *See* Fed. R. Civ. P. 23(b)(2). Certification of a class for injunctive relief is only appropriate where "a single injunction . . . would provide relief to each member of the class." *Dukes*, 131 S. Ct. at 2557.

Class actions under Rule 23(b)(2):

> are proper if injunctive or declaratory relief would be appropriate for an entire class. The Rule may be utilized if a party's action or inaction affects an entire class seeking relief. As a general rule, class certification under Rule 23(b)(2) is improper if the primary relief sought by the action is monetary damages. However, if money damages are merely incidental to plaintiffs' request for injunctive or declaratory relief, class actions may be certified under Rule 23(b)(2).

*Bolanos v. Norwegian Cruise Lines Limited*, 212 F.R.D. 144, 156-57 (S.D.N.Y. 2002). The Second Circuit has provided the following guidance in determining if money damages are primary or incidental:

> although the assessment of whether injunctive or declaratory relief predominates will require an ad hoc balancing that will vary from case to case, before allowing (b)(2) certification a district court should, at a minimum, satisfy itself of the following: (1) even in the absence o f a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits. Insignificant or sham requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery.

*Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 164 (2d Cir. 2001).

In the present case, the Plaintiffs' claims primarily seek money damages and for that reason alone certification under 23(b)(2) is inappropriate. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 88 (S.D.N.Y. 2001) (*citing Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 564 (2d Cir. 1968), vacated on other grounds, 417 U.S. 156, 40 L. Ed. 2d 732, 94 S. Ct. 2140 (1974)) ("Subsection (b)(2) was never intended to cover cases... where the primary claim is for damages, but is only applicable where the relief sought is exclusively or predominantly injunctive or declaratory.")).

Moreover, Plaintiffs again argue that the "injunctive relief is appropriate because Defendants have acted on grounds that apply generally to the class by opposing Named Plaintiffs' and Class Members' Motions in a standard manner, including by filing uniform Opposition." (ECF. Doc. No. 13 at p. 19). Again, Plaintiffs' argument relies on the erroneous position Defendants have acted in a "standard" or "uniform" manner. Any determination as to liability would, at an absolute minimum, require an investigation into each underlying judgment and Motion to Vacate. As such, class-wide injunctive relief is inappropriate in light of the fact that the relief cannot be uniformly applied to the entire proposed class.

## IV.    CONCLUSION

For the foregoing reasons, the proposed class does not meet the rigorous requirements of Fed. R. Civ. P. 23 and, as such, Plaintiffs' Motion for Class Certification must be denied.

Dated: Woodbury, New York
February 20, 2020

KAUFMAN DOLOWICH & VOLUCK, LLP

By: _____
Brett A. Scher, Esq.
*Attorneys for Defendants*
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
T: (516) 681-1100
E: bscher@kdvlaw.com

TO:    All Counsel of Record (VIA ECF*)*