UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

WILLIAM SOTO, DOMINGO TOLENTINO, and
LUIS VIRUET, individually and on behalf of all
persons similarly situated,

Plaintiffs,

-against-

HOUSLANGER & ASSOCIATES, PLLC, TODD
HOUSLANGER, and BRYAN BRYKS,

Defendants.

**No. 19 Civ. 6691 (SJB)**

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
PROVISIONAL CERTIFICATION OF A SETTLEMENT CLASS
AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

NEW YORK LEGAL ASSISTANCE GROUP
100 Pearl Street, 19th Floor
New York, NY 10004
Telephone: (212) 613-5000

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... III

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND .............................................................................................................. 2

I.  Allegations in the Complaint .............................................................. 2

II. This Litigation ..................................................................................... 4

III. Settlement Negotiations ...................................................................... 5

IV. Summary of the Settlement Terms ....................................................... 6

V.  Proposed Allocation Plan for Monetary Awards to Class Members ...... 9

VI. Proposed Notice to Class Members, and Settlement Administration ...... 11

VII. Class Counsel's Zealous Work on Behalf of the Class ........................ 12

ARGUMENT .................................................................................................................. 13

I.  The Settlement Should Receive Preliminary Approval ....................... 13

    A.  Settlement Approval Process and Standard of Review ................ 13

    B.  The Settlement Is Fair, Reasonable, and Adequate ................... 15

        1.  Rule 23(e)(2)(A): Named Plaintiffs and Class Counsel
            Have Adequately Represented the Class ........................ 15

        2.  Rule 23(e)(2)(B): The Settlement Proposal Was Negotiated
            at Arm's Length .......................................................... 16

        3.  Rule 23(e)(2)(C): The Relief Provided for the Class Is
            Adequate ................................................................... 17

            i.   Rule 23(e)(2)(C)(i): Costs, Risks, and Delay of
                 Trial and Appeal .............................................. 17

            ii.  Rule 23(e)(2)(C)(ii): Effectiveness of Proposed
                 Method of Claims Processing ............................. 23

            iii. Rule 23(e)(2)(C)(iii): Attorneys' Fees ............... 24

            iv.  Rule 23(e)(2)(C)(iv): Agreements Made in
                 Connection with Proposal ................................ 26

        4.  Rule 23(e)(2)(D): The Proposal Treats Class Members
            Equitably Relative to Each Other ................................. 26

        5.  Additional *Grinnell* Factors ...................................... 29

        6.  Rule 23(e)(1): Proposed Notice to the Class ................. 29

            i.   Notice to the Class .......................................... 29

            ii.  Telephonic Fairness Hearing ............................. 32

    II. Provisional Class Certification Should Be Granted for Settlement Purposes ...... 32

A.    The Proposed Class Meets the Requirements of Rule 23(a)......................33

    1.    The Proposed Class Is Sufficiently Numerous ..............................33

    2.    There Are Common Questions of Law and Fact ...........................33

    3.    Named Plaintiffs' Claims Are Typical of Class Members' ...........34

    4.    The Named Plaintiffs Are Adequate Representatives ..................35

B.    The Proposed Classes Meet the Requirements of Rule 23(b) ..................35

    1.    The Court Should Certify a Class Seeking Injunctive Relief Under Rule 23(b)(2).........................................................................36

    2.    The Court Should Certify a Class Seeking Damages Under Rule 23(b)(3)...................................................................................36

        i.    Common Questions Predominate ......................................36

        ii.    A Class Action Is the Superior Method of Adjudication......................................................................38

        iii.    The Proposed Class Is Ascertainable................................39

C.    NYLAG Satisfies the Rule 23(g) Prerequisites for Appointment as Class Counsel..........................................................................................39

CONCLUSION........................................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591 (1997).................................................................................................. 38

*In re AOL Time Warner, Inc.*,
    2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)............................................................. 29

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
    789 F. Supp. 2d 935 (N.D. Ill. 2011) ...................................................................... 30

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ....................................................................... 21

*Burkett v. Houslanger & Associates et al.*,
    No. 19 Civ. 2285 (E.D.N.Y.).......................................................................... passim

*Beach v. JPMorgan Chase Bank*,
    17 Civ. 563 (S.D.N.Y) ….................................................................................. .32

*Caridad v. Metro–N. Commuter R.R.*,
    191 F.3d 283 (2d Cir. 1999)..................................................................................... 34

*Charron v. Pinnacle Grp. N.Y. LLC*,
    874 F. Supp. 2d 179 (S.D.N.Y. 2012)............................................................... 18, 20

*Charron v. Wiener*,
    731 F.3d 241 (2d Cir. 2013).............................................................................. 18, 21

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).............................................................................. 14, 17

*Clark v. Ecolab, Inc.*,
    2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009)........................................................ 13

*In re Colgate-Palmolive Co. ERISA Litig.*,
    6 F. Supp. 3d 344 (S.D.N.Y. 2014)......................................................................... 25

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995)....................................................................................... 33

*In re Crazy Eddie Sec. Litig.*,
    824 F. Supp. 320 (E.D.N.Y. 1993) ......................................................................... 25

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2011) ............................................................................... 13, 16

*Damassia v. Duane Reade, Inc.*,
    250 F.R.D. 152 (S.D.N.Y. 2008) ............................................................................ 35

*In re Domestic Airline Travel Antitrust Litig.*,
  322 F. Supp. 3d 64 (D.D.C. 2018) ....................................................... 31

*Dorrance v. ARS Nat. Servs., Inc.*,
  2015 WL 2213514 (M.D. Pa. May 11, 2015) ........................................ 21

*Francisco Corte v. Fig & Olive Founders LLC*,
  2015 WL 12591677 (S.D.N.Y. June 24, 2015) ..................................... 32

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ......................................................... 21

*Garland v. Cohen & Krassner*,
  2011 WL 6010211 (E.D.N.Y. Nov. 29, 2011) .................................. 19, 28

*In re General Motors LLC Ignition Switch Litig.*,
  2020 WL 7481238 (S.D.N.Y. Dec. 18, 2020) ....................................... 32

*GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) ........................................... 17

*GSE v. Washington Mut. Bank*, F.A.,
  2006 WL 318814 (E.D.N.Y. 2006) ....................................................... 28

*In re Glob. Crossing Secs. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................... 30

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)....................................................... 14, 24, 23

*Gross v. Washington Mut. Bank, F.A.*,
  2006 WL 318814 (E.D.N.Y. Feb. 9, 2006)............................................ 28

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019)............................................. 17, 28

*Guippone v. BH S&B Holdings LLC*,
  2016 WL 5811888 (S.D.N.Y. Sept. 23, 2016)...................................... 28

*Hadel v. Gaucho, LLC*,
  2016 WL 1060324 (S.D.N.Y. Mar. 14, 2016) .................................. 13, 15

*Hall v. AT&T Mobility LLC*,
  2010 WL 4053547 (D.N.J. Oct. 13, 2010)............................................ 31

*Hall v. ProSource Techs., LLC*,
  2016 WL 1555128 (E.D.N.Y. 2016) ..................................................... 25

*Hernandez v. Between the Bread 55th Inc.*,
  No. 17 Civ. 9541 (S.D.N.Y.), ............................................................... 32

*Johnson v. Brennan*,
  2011 WL 4357376 (S.D.NY. Sept. 16, 2011)....................................... 29

*In re LIBOR-Based Financial Instruments Antitrust Litig.*,
  327 F.R.D. 483 (S.D.N.Y. 2018) .......................................................... 14

*Maley v. Del Glob. Techs. Corp.*,
　186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) ..........................................................25

*Marcoux v. Szwed*,
　2017 WL 679150 (D. Me. Feb. 21, 2017) ............................................................ 21

*Marisol A. v. Giuliani*,
　126 F.3d 372 (2d Cir. 1997).................................................................................. 34

*Massiah v. MetroPlus Health Plan, Inc.*,
　2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)....................................................... 25

*Masters v. Wilhelmina Model Agency, Inc.*,
　473 F.3d 423 (2d Cir. 2007).................................................................................. 28

*Mazzei v. Money Store*,
　829 F.3d 260 (2d Cir. 2016).................................................................................. 34

*Millea v. Metro-North Railroad Co.*,
　658 F.3d 154 (2d Cir. 2011).................................................................................. 25

*In re Namenda Direct Purchaser Antitrust Litig.*,
　462 F. Supp. 3d 307 (S.D.N.Y. 2020)................................................................... 14

*In re Nasdaq Market-Makers Antitrust Litig.*,
　176 F.R.D. 99 (S.D.N.Y. 1997) ............................................................................ 14

*Noll v. eBay, Inc.*,
　309 F.R.D. 593 (N.D. Cal. 2015) .......................................................................... 31

*O'Connor v. AR Res., Inc.*,
　2012 WL 12743 (D. Conn. Jan. 4, 2012).............................................................. 28

*In re Online DVD-Rental Antitrust Litig.*,
　779 F.3d 934 (9th Cir. 2015) ................................................................................ 31

*Ortega v. Uber Tech., Inc.*,
　2018 WL 4190799 (E.D.N.Y. May 4, 2018) ......................................................... 30

*In re PaineWebber Ltd. P'ships Litig.*,
　171 F.R.D. 104 (S.D.N.Y. 1997) .......................................................................... 18

*In re Petrobras Sec.*,
　862 F.3d 250 (2d Cir. 2017).................................................................................. 39

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
　2020 WL 6193857 (E.D.N.Y. Oct. 7, 2020).......................................................... 32

*Robidoux v. Celani*,
　987 F.2d 931 (2d Cir. 1993).................................................................................. 34

*Sand v. Greenberg*,
　2011 WL 1338196 (S.D.N.Y. Mar. 22, 2011) ....................................................... 26

*Sanders v. Houslanger & Associates, PLLC et al.*,
　No. 17 Civ. 8985 (S.D.N.Y. 2017) ....................................................................... 10

*Stinson v. Houslanger & Associates*,
No. 18 Civ. 11350 (S.D.N.Y) ............................................................................ 20

*Sykes v. Mel S. Harris & Assocs. LLC*,
285 F.R.D..279 (S.D.N.Y. 2012) ................................................................... 37, 38

*Sykes v. Mel S. Harris & Assocs. LLC*,
780 F.3d 70 (2d Cir. 2015)................................................................... 32, 34, 37

*Sykes v. Mel Harris & Assocs. LLC*,
2016 WL 3030156 (S.D.N.Y. May 24, 2016) ....................................................... 19

*In re U.S. Foodservice Inc. Pricing Litig.*,
729 F.3d 108 (2d Cir. 2013)................................................................. 37, 38, 38

*Vasto v. Credico (USA) LLC*,
2016 WL 2658172 (S.D.N.Y. May 5, 2016) ....................................................... 30

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011).................................................................................... 33, 36

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005)............................................................................ 13, 30

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982)............................................................................ 31

## Statutory Authorities

15 U.S.C. § 1692 ............................................................................... passim

Fair Debt Collection Practices Act § 1692 ........................................... passim

New York General Business Law § 349...................................... 26, 36, 37

New York General JudiciaryLaw § 487 ..................................... 18, 36, 37

## Rules and Regulations

Fed. R. Civ. P. 23.................................................................................. passim

## Secondary Sources

William B Rubenstein, Alba Conte & Herbert B Newberg,
Newberg on Class Actions (5th ed. 2019)……………………………………10, 35

**PRELIMINARY STATEMENT**

Named Plaintiffs William Soto, Domingo Tolentino, and Luis Viruet, individually and on behalf of approximately 3,200 putative class members (the "Class Members," and together with Named Plaintiffs, the "Class"), brought this suit against Defendants Houslanger & Associates, PLLC ("H&A"), a debt collection law firm, and Todd Houslanger ("Houslanger") and Bryan Bryks ("Bryks"), two attorneys at the firm, to stop Defendants from extracting money from consumers by improperly executing on old New York City Civil Court judgments. After two-and-a-half years of zealous litigation and extensive arm's-length negotiations, Plaintiffs entered a class-wide Settlement Agreement with Defendants that resolves all claims on a class-wide basis. Plaintiffs now seek provisional certification of the settlement class and preliminary approval of the settlement.

The proposed settlement should be approved because it provides the Class critical injunctive and monetary relief. Specifically, under the Settlement Agreement, Defendants H&A and Houslanger have agreed to permanently cease collecting on the approximately $11 million in outstanding judgments against all Class Members. They will also permanently cease collecting on *all* Assigned Judgments that were entered by New York City Civil Court prior to August 1, 2012 (Assigned Judgments are those judgments that were assigned to a new judgment creditor after the judgment was entered), effectively amounting to a permanent ban on the practices challenged by the Complaint. In addition, those Defendants have agreed to a three-year ban on collection of certain post-August 1, 2012 New York City Civil Court Assigned Judgments, and, even for Judgments on which they are permitted to collect, a three-year requirement that they obtain a copy of the judgment and affidavit of service, and send certain notices, before executing. Additionally, Defendants will pay $155,000 into a settlement fund, which is significant in light

1

of Defendants' extremely limited financial resources and available insurance proceeds.

The settlement is particularly valuable to the Class because proceeding to trial would require significant time, resources, and litigation risk, *and*, during the pendency of continued litigation, Defendants would continue to collect on Class Members. Moreover, Defendants' current and projected lack of financial resources makes it likely that even successful litigation could ultimately result in little or no monetary relief for the Class. Such an outcome would leave Class Members who have already been subject to collections, as well as those subject to collections from here forward as litigation proceeds, without any ability to receive compensation for their harms.

Because the proposed class meets all of Rule 23's requirements and the proposed settlement satisfies all the criteria for preliminary approval, Plaintiffs respectfully request that the Court:

1. grant preliminary approval of the proposed Settlement Agreement and Allocation Plan;

2. provisionally certify a Class for settlement purposes under Fed. R. Civ. P. 23(b)(2) and (b)(3), as defined below, and appoint New York Legal Assistance Group ("NYLAG") as Class Counsel, and William Soto, Domingo Tolentino, and Luis Viruet as class representatives; and

3. approve the proposed notice plan and direct the provision of notice to the Class.

A Proposed Order is attached for the Court's consideration as Exhibit 6 to the Declaration of Danielle Tarantolo ("Tarantolo Decl.").

## BACKGROUND

### I.     Allegations in the Complaint

Plaintiffs William Soto, Domingo Tolentino, and Luis Viruet were all sued by debt collectors in New York City Civil Court between 2002 and 2005. Compl. ¶¶ 207, 244, 283. But since none of the Plaintiffs was ever served, they did not know about the lawsuits, or that default

judgments were entered against them. *Id.* ¶¶ 93, 206, 209, 243, 246, 282, 285. Also unbeknownst to Plaintiffs, those judgments were assigned, years later, to new companies ("Judgment Creditors"), and Defendants then entered the picture, when they began representing the Judgment Creditors for the purpose of collecting on the years-old judgments. *Id.* ¶¶ 18-22, 29, 33, 39, 213, 215, 250, 252, 289, 291.

Over fifteen years after the judgments were entered, Defendants attempted to execute on the judgments against Plaintiffs by garnishing the wages of Mr. Tolentino and Mr. Viruet, and restraining Mr. Soto's bank account, alerting the Plaintiffs for the first time to the existence of the judgments. *See id*. ¶¶ 43, 93, 200, 206, 240, 243, 279, 282. Before executing, Defendants did not review any documentation relevant to the case: not affidavits of service, chain of title documents, case files, or even the judgments themselves. *Id.* ¶¶ 43-76, 218, 254, 294. Often, Defendants did not even possess these documents; they could have obtained many of these documents from the public court file, but did not. And, since Defendants were not involved in the underlying litigation that yielded the judgments, neither Defendants nor their clients had any relevant documentation or independent knowledge about the actions. *Id.* ¶¶ 29, 33, 39, 68-70. Defendants executed on the judgments without having sent any of the notices required by law, including an assignment of judgment, a change of attorney form, or a validation notice. *Id*. ¶¶ 77-92, 206, 243, 282.

Each Plaintiff challenged Defendants' execution by filing a *pro se* Motion to Vacate stating, among other things, that he had never been served. *Id.* ¶¶ 101-02, 219-220, 255, 295. In response to each Plaintiff's Motion, Defendants prepared, served, and filed an Opposition, again, without meaningful review of critical documentation related to the case. *Id.* ¶¶ 104, 222-23, 256-57, 296-97. The Oppositions were signed by Bryks under penalty of perjury and contained

boilerplate language, including the false and misleading statement that "[a]ny and all restraints of bank accounts . . . or garnishment of wages, resulted from the proper execution of a judgment of this Court, lawfully obtained and issued therefrom." *Id.* ¶¶ 105-14, 222-26, 256-63, 296-302. Defendants then prolonged the legal proceedings against each Plaintiff by failing to offer any proof or specific facts as to service—since they did not have any. *Id.* ¶¶ 109, 164, 224, 258, 298. As a result, Mr. Soto and Mr. Viruet had to attend three court dates over the span of months before successfully obtaining vacatur of the judgments; Mr. Tolentino had to attend five court dates before ultimately prevailing. *Id*. ¶¶ 236, 272, 311.

The Complaint alleges that Defendants have engaged, and are engaging, in similar misconduct against many New Yorkers. Specifically, without meaningful review or sending the required notices, Defendants garnished the wages or restrained the bank accounts of thousands of individuals pursuant to old New York City Civil Court judgments, which are almost always legally flawed and of questionable collectability, and were obtained by law firms and companies that are often now defunct. *Id.* ¶¶ 5, 28, 30-32, 38-39, 43-92. Then, when any consumers like Plaintiffs challenged the executions in court, Defendants filed the same boilerplate Oppositions, with the same lack of review. *Id.* ¶¶ 93-139. Defendants' conduct harmed and continues to harm Plaintiffs and Class Members, including through unlawfully-procured payments to Defendants, temporary or permanent loss of access to their own funds, and missed work and other expenses in connection with court appearances. *Id*. ¶¶ 204, 238, 277, 312. Defendants' conduct is knowing and willful, and is ongoing and will continue absent court intervention or approval of this settlement. *Id.* ¶¶ 41-42.

## II.     This Litigation

On April 18, 2019, consumers harmed by Defendants' unlawful debt collection practices

first brought the claims now asserted in this action, against the same Defendants, on behalf of the same putative class; that action was resolved when those consumers accepted Rule 68 offers of judgment of $10,000 each. *See* Rule 68 Offers, ECF No. 17-19, *Burkett v. Houslanger & Associates et al.*, No. 19 Civ. 2285 (E.D.N.Y. June 29, 2019). On November 26, 2019, the same day that the *Burkett* action was finally resolved, Plaintiffs filed the above-captioned action on behalf of themselves and a putative class. Compl. ¶ 313.

On September 25, 2020, Defendants moved to dismiss some of Plaintiffs' claims. ECF No. 36-14. On September 29, 2021, the Court heard oral argument on the motion and rejected the majority of Defendants' arguments, allowing all claims asserted in the Complaint to proceed against all Defendants on behalf of Named Plaintiffs William Soto, Domingo Tolentino, and Luis Viruet. Minute Entry and Order, (Sept. 29, 2022).[1]

On February 24, 2021, Plaintiffs moved to compel certain discovery from Defendants, including production of Defendants' files concerning Class Members. ECF No. 47. On June 9, 2021, the Court granted Plaintiffs' motion in most respects, compelling Defendants to produce Class Member files and documents relating to the Judgment Creditors. ECF No. 56. On October 21, 2021, upon Plaintiffs' motion, the Court lifted its stay of that order and ordered Defendants to produce the compelled documents. Order (Oct. 21, 2021). In total, Defendants produced extensive documentation regarding their practices, their conduct against the Named Plaintiffs, sampled files, and data. Tarantolo Decl. ¶ 12.

## III.    Settlement Negotiations

In August 2020, the Parties exchanged initial settlement proposals. Tarantolo Decl. ¶ 16.

---

[1] The Court granted Defendants' Motion to Dismiss as to the claims brought by Plaintiff Jenifer Dupres based on her signing of a release of claims against Defendants. *Id.*

On September 3, 2020, the Parties appeared at a Settlement Conference before this Court, but a settlement was not reached. *Id*. ¶ 17.

In March 2021, Defendants alerted Plaintiffs that they were interested in re-starting settlement negotiations because Defendants faced a shortage of funds with which to continue litigating. *Id*. ¶ 18. Plaintiffs made a proposal in June 2021, and Defendants responded in July 2021. *Id*. ¶ 18. Following the Court's denial of Defendants' Motion to Dismiss in all aspects relevant to Plaintiffs' class-wide claims, Defendants made an offer in November 2021, and in early January 2022 provided clarification that Plaintiffs had requested; Plaintiffs responded in mid-January 2022. *Id*. ¶ 19.

On January 25, 2022, the Parties appeared at another Settlement Conference before this Court, but, again, a settlement was not reached. *Id*. ¶ 20. For the following five months, the Parties engaged in rigorous, contested settlement discussions as to both monetary and non-monetary settlement terms. *Id*. ¶ 21. The Parties spoke on the phone and/or corresponded by email regarding settlement nearly every week during this period, and frequently on a daily basis. *Id*. ¶ 22. The Parties' negotiations largely focused on Defendants' financial condition and ability to satisfy a judgment, as well as Defendants' willingness to agree to cessation of collections and changed practices that would provide substantial benefits to Class Members, as a means of supplementing the limited available funds. *Id*. ¶ 23. On April 27, 2022, the Parties alerted the Court that they had reached a high-level settlement in principle. *Id*. ¶ 24. After nearly two months spent revising the stipulation and providing and reviewing necessary documentation, on June 20, 2022, the Parties executed the Settlement Agreement. *Id*. ¶ 27.

IV. **Summary of the Settlement Terms**

If approved, the Settlement Agreement would resolve all claims against Defendants

asserted by the proposed settlement Class, which comprises: all individuals against whom Houslanger & Associates, PLLC, Todd Houslanger, or Bryan Bryks, on or after April 19, 2016, have issued an Execution on an Assigned Judgment obtained in New York City Civil Court. Settlement Agreement ¶ I.F. Defendants' records show that there are 3,196 Class Members. Tarantolo Decl. ¶ 29.

To settle this action, Defendants have agreed to *permanently* cease *all* collections on Class Member Judgments—*i.e.*, all New York City Civil Court judgments on which, on or after April 19, 2016, H&A, Houslanger, or Bryks issued an Execution on behalf of a Judgment Creditor that did not originally obtain the judgment ("Class Member Collection Ban"). Settlement Agreement ¶ III.B.4. The total amount outstanding on these judgments is approximately *$11 million*. Tarantolo Decl. ¶ 34-35. To effectuate this cessation of collections, Defendants have a thirty-day period following execution of the Settlement Agreement to notify their clients (the Judgment Creditors) that they will cease collections, then, after another thirty days, they will permanently cease all collections and so notify the marshals' and sheriffs' offices. Settlement Agreement ¶¶ III.B.3-4. Notably, these obligations have already been triggered by the Parties' having executed the Settlement Agreement; Class Members will thus begin to experience relief, even before final approval of the Settlement. *Id.*

Defendants have also agreed to permanently cease all collections on any Assigned Judgment entered by New York City Civil Court prior to August 1, 2012 ("Old Judgment Collection Ban"). Settlement Agreement ¶ III.D.1. This provision effectively amounts to a permanent ban on the conduct challenged by the Complaint, with respect to all New Yorkers, even those upon whom Defendants have not yet issued an execution, such that this conduct will not harm similarly-situated individuals in the future. Tarantolo Decl. ¶ 37.

Additionally, Defendants have agreed to cease certain other conduct for a period of three years. First, for a three-year period, Defendants have agreed not to collect on any New York City Civil Court Assigned Judgments, even those issued after August 1, 2012 (and thus not subject to the permanent Old Judgment Collection Ban) on behalf of the ten companies that currently own the Class Member Judgments ("Specific Creditors Collection Ban"). Settlement Agreement ¶ III.D.2. Second, for the same three-year period, Defendants have agreed not to collect on any *other* Assigned Judgment not subject to another ban—that is, judgments issued after August 1, 2012, on behalf of companies other than the ten Class Member Judgment Creditors—without *first* taking certain critical steps: obtaining a copy of the judgment; obtaining a copy of the affidavit of service; sending a validation notice as required by 15 U.S.C. § 1692g; and sending a notice that H&A is the current law firm attempting to collect on the Assigned Judgment ("Changed Practices Collection Ban"). Settlement Agreement ¶¶ III.E.1-2.

Finally, Defendants will pay $155,000 into a Settlement Fund, which will be, with Court approval, used to pay: distributions to Class Members (at least $71,583); Service Awards to Named Plaintiffs ($11,250); Administration Expenses (up to $20,500); and reasonable attorneys' fees and costs to be sought in connection with final approval (approximately $51,667). Settlement Agreement ¶¶ III.A.1-7; Allocation Plan ¶¶ 3, 7-8. To the extent funds remain after distribution, the Class Administrator and Class Counsel will together determine whether to make further distributions consistent with the Allocation Plan or issue a *cy pres* award; under no circumstances will any of the money in the settlement fund revert to Defendants. Settlement Agreement ¶ III.A.7.

Plaintiffs' agreement to the Settlement Agreement, and in particular to the monetary relief for the Class, was based on Defendants' representations regarding their strictly limited

financial resources with which to satisfy a settlement or judgment larger than the amount of that relief. Tarantolo Decl. ¶ 25. Specifically, Class Counsel reviewed detailed financial documentation showing H&A and Houslanger's current financial position, including bank statements, bills, and the like. Tarantolo Decl. ¶¶ 25-26. Defendants also made specific representations, reviewed by Class Counsel, regarding their extremely limited available insurance proceeds. Plaintiffs' agreement to the Settlement Agreement is expressly conditioned on the accuracy of this documentation and these representations. Settlement Agreement ¶ III.A.8. After reviewing this information, Class Counsel was satisfied that Defendants would not be able to withstand a judgment anywhere near the magnitude sought in this action, or offer meaningfully more monetary relief in settlement. Tarantolo Decl. ¶ 26.

Plaintiffs and Class Members will release all claims against Defendants, and Defendants will release all claims against Class Members, arising out of or related to the Class Member Judgments or the claims asserted in this Action. Settlement Agreement ¶¶ V.A-C. The Judgment Creditors, who are not parties to this suit, are not barred by the Settlement Agreement from collecting on the Class Member Judgments in the future, for example by retaining other counsel. Crucially, however, Plaintiffs do not release any claims against the Judgment Creditors, and still maintain all rights against these entities and any future entity that might collect on their judgments. *Id*. ¶ V.D.  The Class Members' retained rights include the right to attempt to vacate their judgments in New York City Civil Court and the right to bring affirmative claims challenging unlawful debt collections against any party other than Defendants.  *Id*. ¶ V.D.

**V.      Proposed Allocation Plan for Monetary Awards to Class Members**

Class Members who (i) paid more than $1,000 to Defendants in connection with any Class Member Judgment and/or (ii) filed a Motion to Vacate the judgment against them that

Defendants opposed ("Oppositions Class Members") are eligible for compensation. Allocation Plan ¶ 5. However, individuals who were part of the Settlement Class in a prior litigation against these Defendants, *Sanders v. Houslanger & Associates, PLLC et al.*, No. 17 Civ. 8985 (S.D.N.Y.), and released certain claims as part of that settlement ("*Sanders* Class Members") are not eligible for compensation.[2] Allocation Plan ¶¶ 4.B, 5. There are 2,289 Class Members eligible for compensation (72% of the Class): 1,874 individuals who paid more than $1,000 to Defendants in connection with any Class Member Judgment; 467 individuals who are Oppositions Class Members; and 52 individuals who fall into both categories. Tarantolo Decl. ¶ 45.

Each Class Member who is eligible for compensation and submits a valid claim form will receive a baseline payment of $50, and likely substantially more. Allocation Plan ¶ 8.A.III.1. (Payments of at least $50 will be possible unless the response rate among eligible class members exceeds 62.5%, which is virtually unheard of for a settlement of this type. Tarantolo Decl. ¶ 49; *see also* 4 Newberg on Class Actions § 12:17 (5th ed. 2021).) Indeed, there will very likely be substantial additional funds available after that initial per capita distribution. Such remaining funds will be distributed to these Class Members on a proportional basis, based on the amount of money that each Class Member paid Defendants. In effect, each Class Member will receive the same percentage refund of the funds they paid Defendants, on top of the baseline $50 payment. Allocation Plan ¶ 8.A.III.3. In the highly unlikely event that the response rate is greater than 62.5%, and thus funds would not be available to pay each claimant $50, each eligible claimant would

---

[2] The *Sanders* settlement provided over $500,000 in monetary relief. *Sanders v. Houslanger & Associates, PLLC et al.*, No. 17 Civ. 8985 (S.D.N.Y.), ECF No. 90-2. Class Members in the *Sanders* settlement released all claims against H&A and Todd Houslanger relating to the same underlying New York City Civil Court judgments at issue in this action. *Id.* There are 220 members of the Class in this action who are also *Sanders* Class Members. Tarantolo Decl. ¶ 44.

receive an equal payment representing an equal share of the available funds. Allocation Plan ¶ 8.A.III.2. While Class Members who did not pay more than $1,000 to Defendants and did not appear in court to challenge the collection will not receive compensation, they will benefit from the other aspects of the settlement including, crucially, permanent cessation of collections by Defendants.

## VI.     Proposed Notice to Class Members, and Settlement Administration

After a competitive bidding process, Class Counsel retained a Class Administrator, Atticus Administration, LLC, which will distribute notice of the settlement to the Class, process any Class Member objections and requests to opt-out, process claims, distribute settlement funds, respond to Class Member inquiries about the settlement, and manage other aspects of administering the settlement. Tarantolo Decl. ¶¶ 60-63. The proposal put forth by Atticus was substantially more advantageous to the Class than what the other administrators offered. *Id.* The Class Administrator has agreed to charge a fee of no more than $20,500. *Id*. ¶ 61.

Notices (for both Compensation Class Members and those Class Members not eligible for compensation, attached as Exhibits 3-4 to the Tarantolo Declaration), will be provided to all Class Members as follows. Tarantolo Decl. ¶ 64. First, each Class Member for whom Defendants' records contain an email address will be sent notice via email, and each Class Member for whom Defendants' records contain a phone number will be sent notice via text message. *Id*. ¶ 66; Exs. 3-4. Second, at least two weeks later, postcard notice will be mailed to all Class members except those who (i) already filed a Claim Form or (ii) opened the email notice.[3] Tarantolo Decl. ¶ 69; Ex. 5. Third, no later than fourteen days before the deadline to submit

---

[3] The Class Administrator's technology allows reporting of which emails to Class Members have been opened. Tarantolo Decl. ¶ 69.

Claim Forms, a reminder text message and/or email will be sent to all Compensation Class Members who have not submitted a valid claim form and for whom email addresses and/or phone numbers are available from Defendants' records. Tarantolo Decl. ¶ 70. All Notices will contain a link to the settlement website, which will contain more information about the Settlement; for Compensation Class Members, the landing page from that link will direct Class Members to an electronic Claim Form. *Id.* ¶ 71.

## VII.    Class Counsel's Zealous Work on Behalf of the Class

The New York Legal Assistance Group ("NYLAG") is a nonprofit legal services provider dedicated to helping New Yorkers experiencing poverty or in crisis combat financial and other injustice. Tarantolo Decl. ¶ 86. NYLAG has zealously investigated and prosecuted Defendants' practices, expending hundreds of hours. *Id.* ¶¶ 77-82. NYLAG collected documents from and thoroughly interviewed Plaintiffs and investigated their claims. *Id.* ¶ 78. NYLAG has spoken or emailed with many additional Class Members, reviewing their documents and providing legal advice regarding this Action and their underlying state court actions. *Id.* ¶ 79.

NYLAG has aggressively litigated this action, including by filing an exceedingly detailed Complaint, as well as a successful motion to compel, and successfully opposing Defendants' motion to dismiss. ECF Nos. 1, 37, 47, 56. NYLAG also pursued substantive discovery from Defendants, securing production of documents regarding the Named Plaintiffs, and documents regarding the Judgment Creditors and Class Member files that provided key proof of Defendants' business practices. Tarantolo Decl. ¶ 81. NYLAG also negotiated this Settlement Agreement through dozens of phone conversations and emails, over the course of months. *Id.* ¶ 82.

Notably, as a legal services provider, NYLAG has over decades assisted hundreds of

clients affected by Defendants' business practices as challenged in the complaint. *Id*. ¶ 80. With

the resolution of this action, Defendants will no longer be able to engage in the unlawful

practices challenged in this action, providing a crucial benefit to NYLAG's clients and

consumers across New York City. *Id*. ¶ 41.

## ARGUMENT

**I.      The Settlement Should Receive Preliminary Approval**

### A.  Settlement Approval Process and Standard of Review

There is a "strong judicial policy in favor of settlements, particularly in the class action

context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal

quotation marks and citation omitted). Speedy settlement "allows class members to recover

without unnecessary delay and allows the judicial system to focus resources elsewhere." *Hadel v.

Gaucho, LLC*, No. 15 Civ. 3706, 2016 WL 1060324, at \*2 (S.D.N.Y. Mar. 14, 2016).

Federal Rule of Civil Procedure 23(e) requires a court to approve a class action

settlement before it can become binding. A court may approve such a settlement if it finds, in its

discretion, that it is "fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart*,

396 F.3d at 116; *see also* Fed. R. Civ. P. 23(e)(2). "The District Court determines a settlement's

fairness by examining the negotiating process leading up to the settlement as well as the

settlement's substantive terms." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85-87 (2d Cir. 2011).

The Court should "give proper deference to the private consensual decision of the parties . . .

[and] should keep in mind the unique ability of class and defense counsel to assess the potential

risks and rewards of litigation." *Clark v. Ecolab, Inc.*, No. 07 Civ. 8623, 2009 WL 6615729, at

\*3 (S.D.N.Y. Nov. 27, 2009).

In evaluating the substantive fairness, adequacy, and reasonableness of a class action

settlement, courts in the Second Circuit have historically considered nine "*Grinnell*" factors: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ("*Grinnell*"); *see also In re LIBOR-Based Fin Instruments Antitrust Litig.*, 327 F.R.D. 483, 493 (S.D.N.Y. 2018) (discussing use of the *Grinnell* factors in the Second Circuit).

On December 1, 2018, amendments to Federal Rule of Civil Procedure 23 took effect that, among other changes, added specific factors to Rule 23(e)(2) that a Court must review in determining whether a proposed class-wide settlement is fair, reasonable, and adequate. Under the amended Rule 23(e)(2), a Court must consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). Following the amendment, "the factors set forth in Rule 23(e)(2) have been applied in tandem with the Second Circuit's *Grinnell* factors and 'focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision to whether to approve the proposal.'" *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 311 (S.D.N.Y. 2020).

Class action settlement approval involves two steps. First, the Court must evaluate the

proposed settlement on a preliminary basis, often termed "preliminary approval." Upon "the parties' showing that the court will likely be able to (i) approve [the Settlement] under Rule 23(e)(2) and (ii) certify the class for purposes of judgment on the proposal," the Court must direct notice to the Class. Fed. R. Civ. P. 23(e)(1)(B). The standard for preliminary approval is less exacting than at the final stage, and preliminary approval is often granted without a hearing. *See Hadel*, 2016 WL 1060324, at *1-2.

Second, upon granting preliminary approval, the Court orders that notice of the proposed settlement be given to the class members, holds a hearing to determine the fairness and adequacy of the settlement on a final basis, and upon finding that the settlement is fair and adequate, grants the settlement final approval. *See In re Initial Pub. Offering Secs. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

### B. The Settlement Is Fair, Reasonable, and Adequate

#### 1. Rule 23(e)(2)(A): Named Plaintiffs and Class Counsel Have Adequately Represented the Class

Rule 23(e)(2)(A) directs the Court to consider whether "the class representatives and class counsel have adequately represented the class." This is a "procedural" inquiry, and "the focus . . . is on the actual performance of counsel acting on behalf of the class." Advisory Committee Note, Rule 23(e)(2)(A-B). Here, the Named Plaintiffs and Class Counsel have more than adequately represented the Class throughout the litigation, weighing in favor of settlement.

Class Counsel performed hundreds of hours of work on this litigation, including: interviewing, collecting documents from, and providing information to Named Plaintiffs and other Class Members; filing an exceedingly detailed Complaint; filing a successful motion to compel; successfully opposing Defendants' motion to dismiss; reviewing discovery produced by Defendants; zealously seeking additional document production; working with Named Plaintiffs

to produce discovery to Defendants; and negotiating this Settlement Agreement. Tarantolo Decl. ¶¶ 77-84.

The Named Plaintiffs have adequately represented the Class through full and open cooperation with Class Counsel, including by attending meetings and interviews with counsel, providing records for production, attending the settlement conferences with the Court, and reviewing and approving the substance of the Settlement. *Id*. ¶¶ 56-59. Named Plaintiffs contributed substantial time and effort meeting with Class Counsel and providing documents and information to assist in both litigation and settlement negotiations. *Id*. ¶ 56. They undertook these efforts despite having limited means and little familiarity with proceedings of this nature. *Id*. ¶ 57.

## 2. Rule 23(e)(2)(B): The Settlement Proposal Was Negotiated at Arm's Length

Rule 23(e)(2)(B) requires that "the proposal [have been] negotiated at arm's length." The procedural fairness of a settlement is based on the negotiating process that led to it. *D'Amato*, 236 F.3d at 85. To find a settlement process fair, the court must "ensure that the settlement resulted from arm's-length negotiations and that plaintiff['s] counsel . . . possessed the experience and ability . . . necessary to effective representation of the class's interests." *Id.* (internal quotation marks omitted).

The settlement discussions in this matter, which began in mid-2020, were highly contested and spanned nearly two years, including the Parties' attendance at two settlement conferences before this Court, neither of which resulted in settlement due to gulf between the Parties' positions. *Id.* ¶¶ 17, 20. The Parties began extremely intensive settlement negotiations in February 2022, following the second settlement conference before the Court, and engaged in rigorous, contested discussions throughout the subsequent five months as to both the monetary

and non-monetary settlement terms of settlement. *Id.* ¶ 21. Rule 23(e)(2)(B) is therefore satisfied.

### 3. Rule 23(e)(2)(C): The Relief Provided for the Class Is Adequate

#### i. Rule 23(e)(2)(C)(i): Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i), which asks the Court to consider the "costs, risks, and delay of trial and appeal" overlaps with a number of *Grinnell* factors, which help guide the Court's application of the Rule. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019). Specifically, the Court's inquiry should be guided by the following *Grinnell* factors: the complexity, expense, and likely duration of the litigation (Factor 1); the risks of establishing liability (Factor 4); the risks of establishing damages (Factor 5); the risks of maintaining the class action through the trial (Factor 6); the ability of the defendants to withstand a greater judgment (Factor 7); the range of reasonableness of the settlement fund in light of the best possible recovery (Factor 8); and the range of reasonableness of the settlement fund as compared to a possible recovery in light of all the attendant risks of litigation (Factor 9). *Id.* at 693-94. As explained below, proceeding to trial in this action would involve extensive time and resources, and some litigation risk. More importantly, Defendants' severe lack of financial resources creates a risk that even successful litigation to judgment would ultimately be fruitless for Plaintiffs, as there is a significant chance that even if they establish liability, Plaintiffs could obtain little or no money for the Class—while allowing Defendants to continue collecting on the judgments against Class Members during the pendency of the litigation.

Complexity, expense and likely duration of the litigation (Factor 1): This case is complex, involving FDCPA and related state law claims on behalf of over three thousand Class Members, each of whom is connected to a separate state court action filed a decade or more ago. Continuing litigation would involve depositions, as well as some further document production by Defendants on pending requests, before proceeding to class certification and summary judgment

briefing. Tarantolo Decl. ¶¶ 90-91, 93. The delay in continuing to litigate would have substantial negative ramifications for the Class, as Defendants would continue to collect money owed on the approximately $11 million in outstanding judgments against Class Members during the pendency of litigation and, as described below, would be less likely in the future to have sufficient funds with which to satisfy a judgment. *Id*. ¶ 94. This factor weighs in favor of the proposed settlement. *See, e.g.*, *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 196-97 (S.D.N.Y. 2012) (granting final approval of settlement class action where "[t]he path from this stage of the litigation to a final judgment . . . would be long, complicated, and expensive . . . [n]otwithstanding the strength of the evidence Plaintiffs elicited during . . . investigation and discovery"), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013).

Risks of establishing liability and damages (Factors 4 and 5): Class Counsel believe that the Class has a strong case and would prevail on liability and damages at trial. Tarantolo Decl. ¶ 89. However, "[l]itigation inherently involves risks," and the main purpose of settlement "is to avoid a trial on the merits because of the uncertainty of the outcome" and the costs of delay. *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) (internal quotation marks omitted). Although the Court sustained Plaintiffs' claims at the motion to dismiss stage, there would inherently be risk in establishing Defendants' class-wide liability. Tarantolo Decl. ¶ 89. And, as to damages, Plaintiffs face litigation uncertainty as to the amount of actual and statutory damages they could obtain in light of governing FDCPA and state law precedent and Defendants' limited net worth. *Id*. ¶ 90; *see also* 15 U.S.C. § 1692k(a)(2)(B) (capping statutory damages under the FDCPA at 1% of the debt collector's net worth). Although Plaintiffs would likely recover a larger amount if they litigated this matter to its conclusion—for example, a New York Judiciary Law § 487 claim can yield treble damages—Plaintiffs would also risk recovering

limited damages or nothing at all if they were unable to persuade the court that the funds

collected by Defendants on behalf of the Judgment Creditors were an appropriate measure of

damages, or to meet the high burden of proof for *mens rea* required for the Judiciary Law claim.

Tarantolo Decl. ¶ 92. Plaintiffs also risk the Court ordering much narrower declaratory and

injunctive relief then that sought in the Complaint. *Id*. "Settlement is favored" where, as here, it

"results in substantial and tangible present recovery, without the attendant risk and delay of

trial." *Sykes v. Mel S. Harris & Assocs. LLC* ("*Sykes III*"), 2016 WL 3030156, at *12 (S.D.N.Y.

May 24, 2016) (internal quotation marks omitted).

    <u>Risks of maintaining the class action through the trial (Factor 6)</u>: The sixth *Grinnell*

factor "weighs in favor of settlement" where "it is likely that defendants would oppose class

certification" if the case were to be litigated. *Garland v. Cohen & Krassner*, 2011 WL 6010211,

at *8 (E.D.N.Y. Nov. 29, 2011). While Plaintiffs believe that their arguments in favor of class

certification are strong, and that a Class would ultimately be certified, Defendants would

vigorously oppose certification—and, indeed, they have already done so, in response to

Plaintiffs' pre-discovery class certification motion, which was denied without prejudice to

renewal following discovery. ECF No. 23. This factor thus weighs in favor of preliminary

approval of the settlement.

    <u>Ability of the defendants to withstand a greater judgment (Factor 7)</u>: The Defendants'

inability to withstand greater judgment is the factor weighing most strongly in favor of approving

the settlement here. The settlement negotiations on the monetary aspects of settlement largely

focused on the ability of Defendants H&A and Houslanger to pay an eventual judgment out of

their own resources or their insurance proceeds. Tarantolo Decl. ¶ 25. Defendants represented

that they had very limited assets as well as extremely limited remaining proceeds available under

their applicable insurance policy. *Id.* ¶ 23. To substantiate these claims, Class Counsel sought and obtained detailed financial information from Defendants H&A and Houslanger, including bank statements, bills, and the like, as well as attorney representations regarding available insurance proceeds. *Id.* ¶ 25. Upon reviewing that information, Class Counsel is satisfied that Defendants have very limited financial resources and would be unlikely to withstand a judgment anywhere near the magnitude sought in this case; indeed, Class Counsel is persuaded that, given Defendants' ongoing expenses and limited income, by the time this case were litigated to judgment, Defendants might not be able to withstand any judgment at all. *Id.* ¶ 26. Defendants' Counsel has also represented that Mr. Bryks, who has not worked as a debt collection attorney since 2019, likewise would be unable to withstand a judgment of the magnitude Plaintiffs seek. *Id.* ¶ 26; Settlement Agreement ¶ VII.D. Plaintiffs' consent to the Settlement Agreement is expressly conditioned on the truthfulness of Defendants' financial disclosures. Settlement Agreement ¶ III.A.8.

The reasonableness of Plaintiffs' determination that Defendants may not be able to withstand a greater judgment is bolstered by the fact that collection on very old Assigned Judgments — which is the practice challenged by the Complaint and which Defendants have agreed to cease under the Settlement Agreement — comprises the majority of Defendants' business.[4] If Defendants were to have resources to satisfy a judgment at the conclusion of the litigation, those resources would likely have come straight out of Class Members' pockets, via collection on Class Members during continued litigation, and would likely have already been substantially dissipated. Tarantolo Decl. ¶ 95.

---

[4] *See Stinson v. Houslanger & Associates*, No. 18 Civ. 11350 (S.D.N.Y), ECF Nos. 121-4, 121-5 (deposition testimony of Defendants Bryks and Houslanger in an individual action asserting claims that overlap with those here).

<u>Range of reasonableness of the settlement fund in light of the best possible recovery and attendant risks of litigation (Factors 8 and 9):</u> In analyzing the reasonableness of the settlement fund, the Court must assess "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (internal quotation omitted). In other words, "[t]he adequacy of the amount offered should be judged in light of the strengths and weaknesses of the plaintiff[s'] case." *In re Austrian & German Bank Holocaust Litig*., 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000) (internal quotation omitted). The proposed settlement, which provides $155,000 to the Class settlement fund, cessation of outstanding collections on all Class Members by Defendants, and additional benefits, provides the Class valuable injunctive and monetary relief.

The settlement fund very likely exceeds the amount of statutory damages that the Class could obtain were it to prevail on the FDCPA claim, as the FDCPA caps statutory damages at the *lesser* of $500,000 or 1% of the Defendants' net worth, 15 U.S.C. § 1692k(a)(2)(B). This weighs in favor of settlement. *See, e.g.*, *Dorrance v. ARS Nat. Servs., Inc.*, No. 12 Civ. 2502, 2015 WL 2213514, at *6 (M.D. Pa. May 11, 2015) (class-wide damages of "a vast majority of the statutory damages available," as determined by 1% of defendant's net worth, "weigh[ed] in favor of settlement"); *Marcoux v. Szwed*, No. 15 Civ. 093, 2017 WL 679150, at *2 (D. Me. Feb. 21, 2017) (same). Based on Class Counsel's review of Defendants' financial information, Class Counsel believes that 1% of Defendants' current net worth would be vastly less than $155,000. Tarantolo Decl. ¶¶ 90-91.

Plaintiffs believe that if this case were litigated through trial, the Class would be entitled to actual damages under the FDCPA and their state law claims, as well as treble damages under

the New York Judiciary Law, and recognize that the settlement fund is not a high percentage of the Class's hypothetical best possible recovery. *Id*. ¶ 90. The settlement nonetheless reflects a reasonable recovery for the Class given the significant risks of litigation and Defendants' limited net worth, as set forth above, as well as the crucial value of the injunctive relief to the Class Members, including Defendants' commitment to imminently cease collecting on all Class Member Judgments.

It is difficult to precisely estimate the value of Defendants' ceasing collections on all Class Members because the amount of any future collections is inherently speculative. At the highest, stopped collections on the Class could be worth up to approximately *$11 million*, the total amount outstanding on the judgments, all of which is collectible by Defendants absent the commitments to which they would agree under the Settlement. Tarantolo Decl. ¶¶ 35, 94. Class Counsel calculated a more conservative estimate using Defendants' records of collection over the year prior to settlement (May 2021- May 2022), which showed collections of over $28,500 per month; if Class Members were to continue payment at this rate for the remainder of the 20-year statute of limitations on each judgment, stopped collections would be valued at $1.1 million in the aggregate. *Id*. ¶ 36.

Even though the Settlement does not prohibit Judgment Creditors (who are non-parties) from hiring other attorneys or non-attorney debt collectors to continue collections on the judgments against Class Members, Plaintiffs believe that the cessation of collections still provides crucial value to the Class, for multiple reasons. *First*, some or all Judgment Creditors may decide not to continue collecting on these judgments at all, both because of the judgments' age and also because this litigation has exposed their dubious legal status. Accordingly, Defendants' agreement to permanently cease collection under the Settlement Agreement is likely

to create, in effect, permanent cessation of collections by all parties. *Second*, notice from this lawsuit is likely to make many Class Members aware of the judgments against them for the first time. This will allow them to take steps in state court to vacate those judgments if they wish; they may also pursue additional relief or assert other claims, as appropriate, against the Judgment Creditors, since the Settlement Agreement expressly preserves those claims. *Third*, even if the Judgment Creditors continue collections, this litigation has put all parties on notice that they will need to do so with stronger procedures or risk FDCPA liability. If the Judgment Creditors or their agents were to collect using such stronger procedures, that would provide key protections to Class Members against unlawful collections. And if the Judgment Creditors or their agents were to collect without using such robust procedures, they would risk immediate litigation on the part of Class Members subject to further unlawful collections, including, potentially, with NYLAG's assistance. *Fourth*, Class Counsel is a non-profit legal services organization that will be available to provide advice to Class Members facing future collections issues, including regarding their retained rights under the Settlement Agreement, and may be able to help Class Members resolve such issues.

### ii. Rule 23(e)(2)(C)(ii): Effectiveness of Proposed Method of Claims Processing

Rule 23(e)(2)(C)(ii) directs the Court to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." The proposed method of processing claims will be effective. Upon receiving the Notice, Class Members eligible for compensation will be able to submit Claim Forms online via the Settlement website,[5] and will be asked to verify their identity by providing easily accessible

---

[5] Class Counsel can provide a screenshot of the Claim Form website to the Court upon request. Tarantolo Decl. ¶ 71. Class Members who are unable to submit Claim Forms online will be able to submit a paper Claim Form by contacting the Class Administrator. *Id.* ¶ 74.

information such as a code printed on their Notice or the last four digits of their social security number. Tarantolo Decl. ¶ 72. This verification process will ensure that payments are made only to eligible Class Members, and will provide a simple way for the Class Administrator to process payment of claims. Class Members will be able to elect to receive payment via electronic means (including PayPal, Venmo, Zelle, physical or electronic debit card, and bank transfer), which is both less expensive to administer and more convenient for class members, or be mailed a paper check if they prefer. *Id.* ¶ 75.

### iii. Rule 23(e)(2)(C)(iii): Attorneys' Fees

As of the date the Parties signed the Settlement Agreement, Class Counsel had already expended hundreds of hours litigating this action, resulting in a preliminary lodestar of hundreds of thousands of dollars, and expect to spend considerable additional hours bringing this matter to its conclusion. Tarantolo Decl. ¶¶ 77, 84-85. Yet, Class Counsel seeks to recover only a small portion of their true attorneys' fees and costs, equal to one-third of the settlement fund ($51,667). Allocation Plan ¶ 8.B. Plaintiffs presently seek preliminary approval of this fee amount and will move for an award of the fees under Rules 23(h) and 54(d)(2) in connection with an eventual request for final approval of the Settlement, which will include additional details regarding Plaintiffs' hours expended to date and hourly rates. Tarantolo Decl. ¶ 85.

The fee amount is eminently reasonable. When assessing proposed attorneys' fees, courts consider the following six factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of the representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger v. Integrated Res., Inc.*, 209 F.3d at 50.

Here, as explained above, counsel expended a tremendous amount of time and labor

zealously pursuing this action. Tarantolo Decl. ¶ 77. This litigation has been substantial,

affecting over three thousand Class Members and including technical claims under the FDCPA.

*Id*. ¶¶ 30, 90. NYLAG has significant experience with complex and class litigation and is highly

qualified. *Id*. ¶ 88.

The size of the fee award is modest in relation to the relief for the Class, amounting to

one-third of the Settlement Fund (and only 4% of the total relief to the Class when taking into

account the monetary portion as well as the $1.1 million estimate of the value of stopped

collections to the Class), a portion that is routinely awarded in this district.[6] This fee is

particularly appropriate under the "sliding scale" approach, in which plaintiffs' counsel are

awarded a smaller proportion of the settlement fund as the size of the fund increases. *In re

Colgate-Palmolive Co. ERISA Litig*., 36 F. Supp. 3d 322, 348 (S.D.N.Y. 2014).

Moreover, the fee amount is far lower than Class Counsel's lodestar, which is in the

hundreds of thousands of dollars, and which Class Counsel will describe in connection with final

approval. *See Goldberger*, 209 F.3d at 50 (holding that lodestar method may be used to calculate

reasonable fees for a class action settlement); *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d

Cir. 2011) (lodestar method calculates attorneys' fees by multiplying number of hours

reasonably expended by reasonable hourly rates). For comparison, the fee award is only

approximately twice the $27,000 in fees and costs awarded to Class Counsel on a litigated fee

motion in the *Burkett* action (the predecessor class action to this case), even though the *Burkett*

---

[6] *See In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326-27 (E.D.N.Y. 1993) (attorneys' fees of 33.8% of settlement fund is reasonable); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) (awarding 33 1/3 % of settlement fund in attorneys' fees); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *11 (S.D.N.Y. Apr. 16, 2012) ("The requested one-third of the [settlement] fund is a reasonable amount given the time and labor of counsel."); *Massiah v. MetroPlus Health Plan, Inc.*, 11 Civ. 05669, 2012 WL 5874655, at *6 (E.D.N.Y. Nov. 20, 2012) (attorneys' fees comprising 30% of settlement fund reasonable); *Hall v. ProSource Techs.*, *LLC*, 14 Civ. 2502, 2016 WL 1555128, at *10 (E.D.N.Y. Apr. 11, 2016) (same).

action was resolved within six months and involved no motion practice, discovery, settlement negotiations of any kind, or class-wide relief. *See Burkett v. Houslanger & Associates et al.*, No. 19 Civ. 2285 (E.D.N.Y.), ECF No. 52.

In addition, public policy considerations strongly support the requested fees here. NYLAG is a non-profit legal services organization that provides representation to New Yorkers like Mr. Soto, Mr. Tolentino, and Mr. Viruet who would not otherwise have the means to obtain private counsel to assist them. Tarantolo Decl. ¶ 86. A fee award to NYLAG would support ongoing work on behalf of New Yorkers in need. *Id*. ¶ 87. Moreover, multiple statutory provisions under which Plaintiffs brought this action provide for fee-shifting, precisely to encourage qualified counsel like NYLAG to commit resources to prosecuting private claims to enforce the law. *See* 15 U.S.C. § 1692k; NY GBL § 349(h).

### iv. Rule 23(e)(2)(C)(iv): Agreements Made in Connection with Proposal

Rule 23(e)(2)(C)(iv) directs the Court to consider "any agreement made in connection with the [settlement] proposal." Other than the Settlement Agreement itself, there are no agreements that have been made in connection with the proposed Settlement. Tarantolo Decl. ¶ 28.

### 4. Rule 23(e)(2)(D): The Proposal Treats Class Members Equitably Relative to Each Other

The proposed Allocation Plan, attached as Exhibit 2 to the Tarantolo Declaration, is fair and treats Class Members equitably relative to each other. "The method of allocation need not be perfect [to warrant preliminary approval]; it must only be rationally related to the relative strengths and weaknesses of the . . . claims asserted." *Sand v. Greenberg*, No. 08 Civ. 7840, 2011 WL 1338196, at *5 (S.D.N.Y. Mar. 22, 2011) (internal quotation marks and citation omitted).

The proposed Allocation Plan excludes from compensation Class Members who paid less

than $1,000 to Defendants in connection with their judgment and who did not appear in Court to challenge the collection by Defendants, as well as Class Members who released claims as part of the settlement in *Sanders v. Houslanger & Associates, PLLC et al.*, No. 17 Civ. 8985 (S.D.N.Y.). Allocation Plan ¶ 5; *see also supra* n.2. These excluded individuals comprise 28% of the Class. Tarantolo Decl. ¶ 46. These individuals paid in the aggregate less than 8% of the total funds collected by Defendants, and they would likely receive only a very small distribution from the settlement. *Id*. ¶ 46. Moreover, these Class Members benefit from the injunctive relief in the settlement, specifically, that Defendants will cease all collections on the judgments entered against them. *Id*. ¶ 47. And they retain all their rights as against third parties, including the Judgment Creditors that own the judgments against them. Settlement Agreement ¶ V.D.

The remaining 2,289 Class Members (72% of the Class) are eligible for compensation and will be treated equitably. Allocation Plan ¶ 5. Each Compensation Class Member who submits a Claim Form will receive a baseline $50 monetary payment as well as an additional payment that is proportional to the amount of money he or she paid to Defendants, corresponding to the same percentage refund of their payments to Defendants.[7] Allocation Plan ¶¶ 8.A.III.1, 8.A.III.3. Class Counsel chose this plan because it is straightforwardly fair: it puts money back into the hands of the Class Members who were injured the most, in that they paid the most to Defendants and/or expended significant time and effort to challenge the judgments against them in Court; it provides a payment of at least $50 to each Class Member, minimizing administrative costs and providing a clear incentive for Class Members to participate in the settlement; and provides an additional payment in an amount related to each Class Member's monetary harm.

---

[7] While it is technically possible that there would not be adequate funds to provide the baseline $50 payment to each Class Member, that would occur only if the response rate among eligible class members exceeds 62.5%, which is virtually unheard of for a settlement of this type. Tarantolo Decl. ¶ 49.

Additionally, the Allocation Plan provides for Service Awards of $3,750 each to Named Plaintiffs Mr. Soto, Mr. Tolentino, and Mr. Viruet. Allocation Plan ¶ 8.A.II. The Named Plaintiffs "play[ed] a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny." *Guippone v. BH S&B Holdings LLC*, No. 09 Civ. 01029, 2016 WL 5811888, at *8 (S.D.N.Y. Sept. 23, 2016). The Service Awards, which are consistent with the range of awards made in similar cases in this Circuit, is reasonable in light of the Named Plaintiffs' time and effort.[8] This amount is also comparable to the amount they would have received in actual or compensatory damages and statutory damages had they brought their own suits, Tarantolo Decl. ¶ 54, and is far less than the $10,000 that Defendants paid to each of the four *Burkett* Named Plaintiffs who brought essentially identical claims. *See Burkett v. Houslanger & Associates et al.*, No. 19 Civ. 2285 (E.D.N.Y.), ECF Nos. 33, 39. Crucially, this amount is equal to individual Rule 68 settlement offers made by Defendants at an earlier stage of this litigation; by foregoing these offers and spending additional years participating in this litigation, Named Plaintiffs have brought tremendous value to thousands of other New Yorkers. Tarantolo Decl. ¶ 55.

Under the proposed Settlement, if money remains in the settlement fund after a first distribution and further distributions are not economically feasible, a *cy pres* distribution may be made to a not-for-profit organization that benefits individuals adversely affected by consumer debt, "for the aggregate, indirect, prospective benefit of the class." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007) (quotations omitted); Allocation Plan ¶ 10.

---

[8] *See, e.g.*, *O'Connor v. AR Res., Inc.*, No. 08 Civ. 1703, 2012 WL 12743, at *9 (D. Conn. Jan. 4, 2012) ($2,000 service award); *see also Garland v. Cohen & Krassner*, No. 08 Civ. 4626, 2011 WL 6010211, at *14 (E.D.N.Y. Nov. 29, 2011) ($3,000 service award); *GSE v. Washington Mut. Bank, F.A.*, No. 02 Civ. 4135, 2006 WL 318814, at *6 (E.D.N.Y. Feb. 9, 2006) ($5,000 service award).

### 5. Additional *Grinnell* Factors

The second *Grinnell* factor asks the Court to consider the reactions of the class to the settlement. All Named Plaintiffs approve of the settlement. Tarantolo Decl. ¶ 58. Thus, at this stage, the second *Grinnell* factor weighs in favor of approving the settlement. The Court should re-examine this factor in connection with final approval, after notice has been issued to the rest of the Class Members.

The third *Grinnell* factor, which focuses on the stage of the proceedings and the amount of discovery completed, also favors preliminary approval of the settlement. In general, settlement is appropriate as long as "the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, No. 02 Civ. 5575, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006) (approving settlement prior to depositions); *see also Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *9-10 (S.D.NY. Sept. 16, 2011) (approving settlement where parties engaged in informal discovery, class counsel conducted interviews and reviewed information provided by defendants, parties met with mediator and exchanged mediation statements, and counsel performed "detailed damages calculations" based on defendant's data, but no depositions were taken). Here, in the two and half years that this case has been pending, the Parties have exchanged significant discovery and are nearly ready to proceed to depositions. Tarantolo Decl. ¶¶ 13, 81. This factor also weighs in favor of settlement.

### 6. Rule 23(e)(1): Proposed Notice to the Class

#### i. Notice to the Class

The Federal Rules of Civil Procedure require notice to be provided when a Rule 23(b)(3) class is certified and when a class action settles. *See* Fed. R. Civ. P. 23(c)(2)(B), 23(e)(1)(B). "Where, as here, the parties seek simultaneously to certify a settlement class and to settle a class

action, the elements of Rule 23(c) notice (for class certification) are combined with the elements of Rule 23(e) notice (for settlement or dismissal)." *In re Glob. Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436, 448 (S.D.N.Y. 2004). Notice to class members must be made "in a reasonable manner" that is "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B), 23(e)(1)(B).

The Parties have retained an experienced claims administrator, Atticus Administration, LLC, which will distribute notice to the Class, process any Class Member objections and requests to opt-out, process claims, distribute settlement funds, respond to Class Member inquiries about the settlement, and manage other aspects of administering the settlement. Tarantolo Decl. ¶ 63. The Notice Plan involves up to three rounds of notice: First, a text message and/or email to all Class Members for whom an email address and/or phone number is available from Defendants' records; second, a postcard notice to all Class Members who have not submitted a Claim Form or opened the email sent to them; and, third, a text message and/or reminder to Compensation Class Members with available contact information. Tarantolo Decl. ¶¶ 66-70.

Plaintiffs' proposal to distribute notice primarily by a mix of postal mail, text message, and email should be approved, as "the standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart*, 396 F.3d at 113. Notice may therefore be made by "United States mail, *electronic means,* or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B) (emphasis added).[9] Utilizing

---

[9] Courts have approved plans involving notice disseminated by text message, where the defendant has class members' phone numbers. *See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 968 (N.D. Ill. 2011) (approving notice plan that included sending text messages to Class Members); *Vasto v. Credico (USA) LLC*, No. 15 Civ. 9298, 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016) (granting plaintiffs' "request for permission to distribute notice [of conditional collective action certification under FLSA] via email and text

electronic means is especially appropriate here, since the notice plan also proposes to send mailed postcard notice to Class Members who have not yet filled out a Claim Form after being notified by text/email, and who have not actually opened the email notice. Tarantolo Decl. ¶ 69. Effecting notice through text and email is far more cost effective than mailed notice; because notice costs will be paid out of the settlement fund, sending notice via electronic means benefits Class Members by preserving more funds for distribution to the Class. *Id*. ¶ 73.

The content of the proposed Individual Notices is also appropriate. They are written in language that is as plain and simple as possible. Tarantolo Decl. Exs. 3-5. They also contain all of the requirements listed in Rule 23(c)(2)(B), including a "general description" that "fairly apprise[s] [the] prospective members of the class of the class action's pendency, the relevant terms of the proposed settlement, and their options in connection with th[e] case." *Weinberger v. Kendrick*, 698 F.2d 61, 70-71 (2d Cir. 1982) (internal quotation marks omitted). Further, the notices provide Class Members with information not only about the relief provided by the settlement, but also about their retained rights in connection with the underlying state court actions — critical information, as Class Members may be unaware of their rights in connection with the judgments entered against them, or even that the judgments existed at all. Tarantolo

---

message"). Courts have likewise approved plans where notice is disseminated by email. *See, e.g.*, *Ortega v. Uber Tech., Inc.*, No. 15 Civ. 7387, 2018 WL 4190799 , at *10-11  (E.D.N.Y. May 4, 2018) (approving notice plan where "settlement class would receive notice of the settlement solely by email; if an email transmitting the settlement notice is returned as undeliverable, the settlement administrator would send a copy of the notice to that class member by physical mail"); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 941, 946 (9th Cir. 2015) (approving settlement notice by email, then notice by regular mail for email notices that "bounced back"); *In re Domestic Airline Travel Antitrust Litig.*, 322 F. Supp. 3d 64, 71-72 (D.D.C. 2018) (settlement notice by email and publication adequate under Rule 23 because direct mail would be disproportionately expensive, and defendant already possessed customer emails); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 601 (N.D. Cal. 2015) (approving plan to disseminate notice to class members using email addresses, by direct mail notice if the emails were undeliverable, by internet posting, and by press release); *Hall v. AT&T Mobility LLC*, No. 07 Civ. 5325, 2010 WL 4053547, at *4-6 (D.N.J. Oct. 13, 2010) (approving plan which included disseminating notice in class members' electronic monthly billing statements, sent via email).

Decl. ¶¶ 67-68; *id.* Ex. 3-5.  And the Notice will direct Class Members to the settlement website, which will have additional information. *Id*. Ex. 3-5.

### ii.  Telephonic Fairness Hearing

Class Counsel proposes that the Fairness Hearing in this matter be held telephonically. Many courts, including in this district, have ordered telephonic fairness hearings since the start of the COVID-19 pandemic.[10] If the Court orders a telephonic fairness hearing, Class Counsel will cooperate with the Court to ensure that Class Members are properly notified of the procedures for joining the telephonic hearing. Tarantolo Decl. ¶ 76.

## II.    Provisional Class Certification Should Be Granted for Settlement Purposes

Plaintiffs seek provisional approval of a settlement class pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3) which comprises: all individuals against whom Houslanger & Associates, PLLC, Todd Houslanger, or Bryan Bryks, on or after April 19, 2016, have issued an Execution on an Assigned Judgment obtained in New York City Civil Court. Settlement Agreement ¶ II.A. Defendants' records show that there are 3,196 Class Members. Tarantolo Decl. ¶ 30. Defendants have agreed to the certification of this Class for the purposes of settlement. Settlement Agreement ¶ II.

Provisional class certification for the settlement of a putative class action has the key practical advantages of "avoiding the costs of litigating class status while facilitating a global settlement." *Francisco Corte v. Fig & Olive Founders LLC*, No. 14 Civ. 7186, 2015 WL 12591677, at *2 (S.D.N.Y. June 24, 2015). Under Federal Rule of Civil Procedure 23(a), "a class may be certified only if four prerequisites have been met: numerosity, commonality, typicality,

---

[10] *See, e.g., In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, No. 19 Civ. 2563, 2020 WL 6193857, at *1 n.2 (E.D.N.Y. Oct. 7, 2020); *In re General Motors LLC Ignition Switch Litigation*, No. 14-MD-2543, 2020 WL 7481238 (S.D.N.Y. Dec. 18, 2020); *Hernandez v. Between the Bread 55th Inc.*, No. 17 Civ. 9541 (S.D.N.Y.), ECF No. 170; *Beach v. JPMorgan Chase Bank*, 17 Civ. 563 (S.D.N.Y), ECF No. 229.

and adequacy of representation." *Sykes v. Mel S. Harris & Assocs. LLC* ("*Sykes II*"), 780 F.3d 70, 80 (2d Cir. 2015). In addition to satisfying the prerequisites of Rule 23(a), at least one of the three subdivisions of Rule 23(b) must also be satisfied. Fed. R. Civ. P. 23(b). Here, Plaintiffs seek class certification under both Rule 23(b)(2) for injunctive relief, and Rule 23(b)(3) for damages. For the following reasons, class certification is appropriate here.

## A. The Proposed Class Meets the Requirements of Rule 23(a)

### 1. The Proposed Class Is Sufficiently Numerous

Federal Rule of Civil Procedure 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is generally presumed for classes larger than forty members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiffs' proposed Class easily meets the numerosity requirement, because the proposed Class contains 3,196 individuals. Tarantolo Decl. ¶ 30.

### 2. There Are Common Questions of Law and Fact

Rule 23(a)(2) requires there to be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)'s commonality requirement is met if the class members' claims depend on a "common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350.

The claims of the putative Class stem from Defendants' unitary course of conduct in executing on old Assigned Judgments and then opposing Class Members' efforts to vacate those judgments. *See generally* Compl., ECF No. 1. Questions of law and fact common to the Class include, among others: what review, if any, Defendants conducted before execution; what notices, if any, Defendants sent to consumers before execution; what review, if any, Defendants conducted before opposing Motions to Vacate; whether Defendants prolonged legal proceedings

in bad faith; and whether Defendants made false statements in court filings. Compl., ECF No. 1, ¶¶ 321, 331, 334, 341.

There are plainly common questions of law and fact in the context of Defendants' executions and oppositions, as Defendants used materially identical form papers for all members of the proposed Class including, in each opposition, the same false statement that "[a]ny and all restraints of bank accounts . . . or garnishment of wages, resulted from the proper execution of a judgment of this Court, lawfully obtained and issued therefrom." Compl. ¶¶ 105-14, 222-26, 256-63, 296-302. Moreover, each member of the Class was harmed in a similar manner by Defendants' actions, in that Defendants' unitary scheme of execution, and doubling down with intense opposition to vacatur, cost Class Members money in the form of payments to Defendants and their clients as well as the costs of opposing Defendants' efforts. Tarantolo Decl. ¶¶ 29, 36. Commonality is often found where each class member's injuries "derive from a unitary course of conduct by a single system." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997). Here, the Class Members all suffered similar injuries as a result of Defendants' unitary conduct; therefore, this Court may find commonality for the purposes of approving the Settlement Agreement.

### 3. Named Plaintiffs' Claims Are Typical of Class Members'

Rule 23(a)(3) requires that the claims of class representatives be typical of the claims of the class. The typicality requirement is met where, as here, "the disputed issue[s] of law or fact occupy essentially the same degree of centrality to the named plaintiff[s'] claim[s] as to that of other members of the proposed class." *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016) (quoting *Caridad v. Metro–N. Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999)). "[M]inor variations in the fact patterns underlying individual claims" do not prevent a finding of typicality. *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993).

Mr. Soto, Mr. Tolentino, and Mr. Viruet assert claims typical of the claims asserted by the Class, in that they assert that Defendants' scheme violated their individual rights under the FDCPA and state law.[11] *See generally* Compl., ECF No. 1. The other Class Members assert precisely the same claims based on Defendants' unitary course of conduct towards all Class Members. Compl. ¶¶ 328-345. The same form executions and oppositions underlie the claims of Named Plaintiffs and the Class Members. Tarantolo Decl. ¶ 11.

### 4. The Named Plaintiffs Are Adequate Representatives

The final requirement of Rule 23(a) is that the representative parties must fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a)(4). "[A]dequacy is satisfied unless plaintiff's interests are antagonistic to the interest of other members of the class." *Sykes II*, 780 F.3d at 90 (internal quotation marks omitted). None of the Named Plaintiffs have interests antagonistic to the interest of other Class Members. Tarantolo Decl. ¶ 59. To the contrary, they have been subject to the same unlawful conduct as the other Class Members. *Id.* Because "the same strategies that will vindicate [the Named Plaintiffs'] claims will vindicate those of the class," they are adequate class representatives. *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008).

### B. The Proposed Classes Meet the Requirements of Rule 23(b)

In addition to satisfying the prerequisites of Rule 23(a), at least one of the three subdivisions of Rule 23(b) must be satisfied in order to qualify for class certification. Fed. R. Civ. P. 23(b). Here, Plaintiffs seek class certification under both Rule 23(b)(2), for injunctive

---

[11] Mr. Viruet does not assert FDCPA claims, as those claims would be barred by the FDCPA's one-year statute of limitations. *See* ECF No. 37 at 25. Nonetheless, Mr. Viruet remains a typical representative, as the Class consists of other consumers who assert timely state law claims but may not state not timely FDCPA claims (*i.e.*, Class Members upon whom Defendant executed between April 19, 2016 and April 18, 2018); *see also* 1 *Newberg on Class Actions* § 3:45 (5th ed. 2021) ("[T]ypicality will generally not be defeated by allegations that the proposed class representative . . . may face a statute of limitation defense.").

relief, and Rule 23(b)(3), for damages.

### 1. The Court Should Certify a Class Seeking Injunctive Relief Under Rule 23(b)(2)

Rule 23(b)(2) supplies a basis for certification where, as here, the Defendants "ha[ve] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate [for] the class as a whole." Fed. R. Civ. P. 23(b)(2). Defendants have acted on grounds that apply generally to the Class by executing on years-old Assigned Judgments against Class Members and opposing Class Members' efforts to vacate those judgments. The same declaratory and injunctive relief — that Defendants stop collection on all Assigned Judgments against Class Members and future similarly-situated consumers — would provide relief to the Class, who would face future collections of up to $11 million from Defendants absent settlement. Certification under Rule 23(b)(2) is therefore appropriate because the declaratory or injunctive relief Plaintiffs seek would "benefit[] all [the Class Members] members at once." *Dukes*, 564 U.S. at 362.

### 2. The Court Should Certify a Class Seeking Damages Under Rule 23(b)(3)

Plaintiffs and the proposed Class seek provisional certification of a Class under Rule 23(b)(3) because they are entitled to actual, statutory, and punitive damages under the FDCPA (15 U.S.C. § 1692k(a)(2)(B)), N.Y. G.B.L. § 349(h), and N.Y. Judiciary Law § 487. Rule 23(b)(3) certification is appropriate here, because common issues of fact and law predominate over individual issues, the class action is superior to other methods of adjudication, and the proposed class is ascertainable. *See* Fed. R. Civ. P. 23(b)(3).

### i. Common Questions Predominate

Certification under Rule 23(b)(3) requires that questions of law or fact common to the class predominate over individual questions. "The predominance requirement is satisfied if

resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (internal quotation marks omitted). The rule does not require that individual questions be absent; to the contrary, "[t]he text of Rule 23(b)(3) itself contemplates that such individual questions will be present." *Sykes II*, 780 F.3d at 81. "[C]ases regarding the legality of standardized documents . . . often result in the predomination of common questions of law or fact and are, therefore, generally appropriate for resolution by class action." *Sykes v. Mel S. Harris and Assocs. LLC*, 285 F.R.D. 279, 293 (S.D.N.Y. 2012) ("*Sykes I*") (internal quotation marks omitted).

Common questions of law and fact predominate in this action because the claims of Plaintiffs and the Class arise from Defendants' uniform conduct and would require generalized proof. Specifically, Plaintiffs' claims stem from Defendants' common practices of executing on years-old Assigned Judgments, including by issuing nearly-identical executions and opposition papers. *See Sykes I*, 285 F.R.D. at 293 (noting that notwithstanding that "individual issues may exist as to causation and damages," the predominance requirement was met because "[e]very potential class member's claim arises out of defendants' uniform, widespread practice of filing automatically-generated, form affidavits . . . to obtain default judgments against debtors in state court" and concluding that "[w]hether this practice violates the FDCPA . . . New York GBL § 349, [or] New York Judiciary Law § 487 . . . does not depend on individualized considerations").

Any potential individual issues that could arise in this action would not defeat certification. For example, in affirming the District Court in *Sykes*, the Second Circuit specifically rejected that "individual issues related to service" of process would cause "any

individualized causation issues with respect to plaintiffs' claims under the FDCPA." *Sykes II*, 780 F.3d at 91. Nor would individualized issues as to whether each class member owed the underlying debt be relevant to certification, the Court held, given the well-established rule that the existence of an "actual debt is not necessary to bring claims under the FDCPA." *Id*.

### ii. A Class Action Is the Superior Method of Adjudication

Rule 23(b)(3) also requires that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Adjudicating claims stemming from substantially identical execution and opposition practices in a single action avoids an unwieldy number of repetitive individual lawsuits. *See Sykes I*, 285 F.R.D. at 294. Courts also find that damages class actions under Rule 23(b)(3) "can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery," as "substituting a single class action for numerous trials in a matter involving substantial common legal issues and factual issues susceptible to generalized proof achieve[s] significant economies of 'time, effort and expense, and promote[s] uniformity of decision.'" *In re U.S. Foodservice Inc. Pricing Litig*., 729 F.3d at 130 (citation omitted).

The substantial common legal and factual issues in Plaintiffs' case are subject to generalized proof, and overwhelm the comparatively small factual distinctions as to the damages owed to each Class Member; accordingly, proceeding on a class basis is far more economical for Class Members and the Court. Additionally, as many Class Members may lack the means or incentive to pursue their claims on their own, certifying a Rule 23(b)(3) class action here would help to vindicate "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Moreover, Defendants' lack of financial resources and dwindling insurance

proceeds, Tarantolo Decl. ¶ 91, make the prospect of meaningful recovery in any individual action low.

### iii. The Proposed Class Is Ascertainable

Rule 23(b)(3) "contains an implicit threshold requirement that the members of a proposed class be readily identifiable, often characterized as an 'ascertainability' requirement." *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017) (citation omitted). The membership of Plaintiffs' proposed Class is not only ascertainable, in that it is defined "using objective criteria that establish a membership with definite boundaries," *id.*, but it has already been ascertained — the identities of the 3,196 individuals who are in the Class are contained in Defendants' records, have been provided to Class Counsel, and will be provided to the Class Administrator to effectuate accurate and timely notice and claims administration. Tarantolo Decl. ¶ 65.

### C. NYLAG Satisfies the Rule 23(g) Prerequisites for Appointment as Class Counsel

Rule 23(g)(1)(A) sets forth the factors a court must consider in appointing class counsel: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class."

NYLAG is a nonprofit organization that provides high quality, free civil legal services to low-income New Yorkers in a number of fields, including consumer protection. Tarantolo Decl. ¶ 86. NYLAG is highly experienced in class actions and other large and complex matters involving complicated legal and factual issues. *Id.* ¶ 88. NYLAG has successfully litigated dozens of class actions to benefit New Yorkers in poverty, and has been appointed class counsel in many cases. *Id.* ¶ 88.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order, attached as Exhibit 6 to the Tarantolo Declaration, which would grant preliminary approval to the proposed settlement, provisionally certify a class in this matter for settlement purposes, provisionally appoint NYLAG as class counsel and the Named Plaintiffs as class representatives, and direct notice to the Class Members.

Dated: June 23, 2022
      New York, New York

**LISA RIVERA, ESQ.**
NEW YORK LEGAL ASSISTANCE GROUP
100 Pearl Street, 19th Floor
New York, NY 10004
(212) 613-5000
dtarantolo@nylag.org

**DANIELLE TARANTOLO**, of Counsel
**JESSICA RANUCCI**, of Counsel

*Counsel for Plaintiffs*