UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
WILLIAM SOTO, DOMINGO TOLENTINO, and
LUIS VIRUET, individually and on behalf of all
persons similarly situated,

                               Plaintiffs,

vs.

HOUSLANGER & ASSOCIATES, PLLC, TODD
HOUSLANGER, and BRYAN BRYKS,

                               Defendants.
-----------------------------------------------------------------x

No. 19 Civ. 6691 (SJB)

SUPPLEMENTAL DECLARATION OF DANIELLE TARANTOLO IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Danielle Tarantolo hereby declares, under penalty of perjury, pursuant to 28 U.S.C. § 1746, that:

1.     I am an attorney duly admitted to practice in the Eastern District of New York. I am the Director of the Special Litigation Unit at the New York Legal Assistance Group ("NYLAG"), which represents the preliminarily approved Plaintiff Class in this case. I submit this Supplemental Declaration in support of Plaintiffs' motion for Certification of a Settlement Class and Final Approval of the Class Action Settlement.

<u>Monetary and Injunctive Relief</u>

2.     Defendants have certified to Class Counsel that they have ceased collecting on all Class Member Judgments—*i.e.*, all New York City Civil Court judgments on which, on or after April 19, 2016, H&A, Houslanger, or Bryks issued an Execution on behalf of a Judgment Creditor that did not originally obtain the judgment ("Class Member Collection Ban").

3.     Defendants have certified to Class Counsel that they have permanently ceased all collections on *all other* Assigned Judgments entered by New York City Civil Court prior to August 1, 2012 ("Old Judgment Collection Ban").

1

4. Defendants have certified to Class Counsel that they have ceased collections on *any* New York City Civil Court Assigned Judgments on behalf of the ten companies that currently own the Class Member Judgments, even those issued after August 1, 2012 (and thus not subject to the permanent Old Judgment Collection Ban) ("Specific Creditors Collection Ban").

5. Defendants have certified to Class Counsel that they have ceased collections on any *other* Assigned Judgment not subject to another ban—that is, judgments issued after August 1, 2012, on behalf of companies other than the ten Class Member Judgment Creditors—without *first* taking certain critical steps: obtaining a copy of the judgment; obtaining a copy of the affidavit of service; sending a validation notice as required by 15 U.S.C. § 1692g; and sending a notice that H&A is the current law firm attempting to collect on the Assigned Judgment ("Changed Practices Collection Ban").

Notice to the Class

6. Class Counsel has worked with Atticus to ensure that notices are sent to the Class Members, to direct Atticus's response to Class Member inquiries, to follow up with individual Class Members, and to generally manage the administration of the settlement.

7. Following the first three rounds of notice provided to the Class—email, text, and postcard notice, as described in the accompanying declaration of Bryn Bridley, ¶¶ 8-12—the Class Administrator's records demonstrated that a relatively small number individuals had filed claim forms.

8. Class Counsel was concerned that additional efforts should be taken to notify the Class, beyond what Class Counsel and the Class Administrator had previously contemplated

(and had proposed to the Court in our submission in support of preliminary approval), in order to attempt to increase the number of eligible Compensation Class Members filing claim forms.

9. Following a discussion among Class Counsel and the Class Administrator regarding additional steps that could be taken and the costs of those steps beyond the originally projected budget, Class Counsel made the determination to authorize the following additional rounds of notice: (1) an additional round of text and email notice to Compensation Class Members who had not yet filed Claim Forms and for whom phone numbers and email addresses were available in Defendants' records; (2) an additional postcard reminder to all Compensation Class Members who had not yet filed Claim Forms. The content of the emails, texts and postcards were designed to be succinct and highlight to Class Members the critical importance of filing a timely Claim Form.

10. These additional rounds of Notice carried an additional cost of $1,700. Although Class Counsel recognized that authorizing these expenditures would decrease the funds available for distribution to the Class by that amount, Class Counsel determined in our discretion that the additional expenditures were warranted to ensure that the maximum possible number of Class Members were able to make timely claims for distributions.

11. The additional text and email notices were sent on August 29th. The additional postcard reminder was mailed on September 6th.

12. Class Counsel also sent two additional emails to Compensation Class Members who had not yet timely filed claim forms, directly from a nylag.org email account dedicated to this settlement. The first such email, which was also designed to be succinct and highlight to Class Members the critical importance of filing a timely claim form, and providing links to the

3

online claim form and settlement website, was sent to approximately 600 Class Members on September 15th. The second "reminder" email was sent on September 19th and 20th. NYLAG can those emails to the Court upon request. In response to those emails, NYLAG was contacted by several Class Members and provided assistance to them in filing claim forms. Since the filing of this lawsuit, Class Counsel have communicated with more than two dozen Class Members, including more than a dozen since the entering the Settlement.

13. Because the Complaint alleges that Class Members were not served in the underlying actions; that no Class Members had any direct business relationship with the Judgment Creditors; and that many Class Members paid Defendants involuntarily via wage garnishment or bank levy, many Class Members were unlikely to recognize the name of Defendants or connect this Class Action to the years-old judgment against them. Those same factors made it particularly difficult to reach Class Members, since the email, phone, and address information available was exclusively that in the possession of Defendants, meaning that it was likely to be out-of-date for many Class Members.

Claims Processing

14. Because Plaintiffs seek to distribute funds to the maximum possible number of Class Members, Plaintiffs seek Court approval to continue to accept otherwise-valid late claims filed up until the point when accepting such claims would delay payments to Class Members who timely filed claims.

Efforts to Contact the Objector

15. Only one class member, Diana Farmer, submitted an objection to the settlement.. Defendants' records show that Ms. Farmer paid over $3,000 to Defendants in connection with a 2002 state court debt collection action.

16. NYLAG took extensive steps to attempt to contact Ms. Farmer, in order to provide her with an explanation of the settlement and to ensure that she filed a claim form. Ms. Farmer's objection did not contain either a phone number or email address; it contained only a mailing address.

17. First, NYLAG verified that Ms. Farmer had not contacted anyone within NYLAG, and verified with the Class Administrator that Ms. Farmer had not contacted the Class Administrator. Second, NYLAG called the two phone numbers in Defendants' records for Ms. Farmer. No one answered at either number and neither was equipped with voicemail. Third, NYLAG texted those two numbers, but received no response. Fourth, NYLAG emailed the email address in Defendants' records for Ms. Farmer, but received no response. Fifth, NYLAG asked Defendants' counsel to inquire with Defendant H&A whether Ms. Farmer had contacted their offices and provided any contact information, but Defendants' counsel advised that H&A had no record of her contacting H&A. Sixth, NYLAG tried calling several additional numbers suggested for Ms. Farmer by Internet searches; none of these were in service. Finally, NYLAG sent Ms. Farmer a letter, acknowledging and enclosing a copy of her objection, and inviting her to contact our offices for further information and for instruction about how to file a claim form. This letter was sent by priority mail on September 21st.

18. As of the date of the Declaration, NYLAG has not received a response. NYLAG will continue its efforts to contact Ms. Farmer until the latest possible time for which the Administrator can accept a Claim Form.

Attorneys' Fee Award

19. NYLAG engaged in extensive efforts litigating this complex action over nearly three years.

20. As part of the extensive litigation, Class Counsel spoke and corresponded with over a dozen Class Members, interviewing many Class Members about their experience with Defendants, reviewing their documents and providing legal advice regarding this Action and the Borrowers' underlying judgments.

21. In addition, Class Counsel pursued substantial discovery from Defendants, include reviewing hundreds of documents produced by Defendants.

22. Two attorneys were principally responsible for the work in this case: myself and Jessica Ranucci, a coordinating attorney in the Special Litigation Unit.

23. I graduated from Yale Law School in 2006. From 2006-07, I clerked for Hon. Sonia Sotomayor, when she was a judge on the Second Circuit Court of Appeals. From 2007-08, I clerked for Hon. Jed S. Rakoff of the Southern District of New York. I worked from 2008-11 at the law firm Jenner & Block as a litigation associate, where I litigated complex civil matters and was awarded the firm's pro bono award for my commitment to pro bono work. I joined NYLAG's Special Litigation Unit as a staff attorney in 2011, became the Unit's Associate Director in 2015, and its Co-Director in 2017. While in the Special Litigation Unit, I have acted as counsel, including lead and co-lead counsel, on a large number of class actions and other

impact litigation to benefit low-income New Yorkers. These cases have been in a range of fields, including consumer protection, public benefits, disability rights, and education.

24. My colleague Jessica Ranucci graduated from Harvard Law School *magna cum laude* in 2016. Ms. Ranucci joined NYLAG's Special Litigation Unit in 2017 after serving as a law clerk for the Honorable Allyne R. Ross of the United States District Court for the Eastern District of New York. At NYLAG, Ms. Ranucci is a coordinating attorney in the Special Litigation Unit. Ms. Ranucci has been invited by the New York City Department of Consumer Affairs and the National Consumer Law Center to speak as an expert on consumer law. Ms. Ranucci has also been selected by the United States Department of Education to sit on two negotiated rulemaking committees to represent the interest of legal aid organizations in re-writing certain federal regulations regarding student loans.

25. Ms. Ranucci and I have together litigated a number of consumer class actions and other impact litigation cases that benefit low-income New Yorkers, including: *Philemon v. Aries Capital Partners, Inc.*, 18 Civ. 1927 (E.D.N.Y.); *Williams v. Equitable Acceptance Corp.*, 18 Civ. 7527 (S.D.N.Y.); *Quero v. DeVos*, 18 Civ. 9509 (S.D.N.Y.); *Flores v. Technical Career Institutes, Inc.*, Adv. Proceeding No. 18-01554 (Bankr. S.D.N.Y.); and *Colon v. DeVos,* 19 Civ. 6597 (S.D.N.Y).

26. The chart below shows the total hours, requested rates, and total lodestar for Jessica Ranucci and myself for this matter:

| Name | Grad. Year | Total Hours | Rate | Total Fee |
| --- | --- | --- | --- | --- |
| Danielle Tarantolo | 2006 | 254.7 | $450 | $114,629 |
| Jessica Ranucci | 2016 | 344.4 | $300 | $103,320 |
| **Total** | | | | **$217,949** |

27. Jessica Ranucci and I have expended and will continue to expend additional hours in connection with this Settlement, including coordinating with Atticus to distribute payments, following up individually with class members regarding their Settlement payments and other issues relating to the Settlement, and considering whether further distributions are necessary.

28. NYLAG calculated its lodestar using rates within the range of fee awards in this district for attorneys of comparable seniority, working on comparable matters.[1]

29. Numerous NYLAG attorneys, paralegals, administrative staff, and law students have worked on this matter at different times and on different portions of the case; however, in the exercise of billing judgment, NYLAG has included only the fees of one partner-level attorney and one associate-level attorney, and has excluded work from other timekeepers that would otherwise be compensable.

30. In addition, NYLAG incurred at least $516.58 in costs, including the $400 filing fee for this action and $116.58 costs incurred in obtaining transcripts of Court proceedings.

31. The $51,667 award Plaintiffs seek is *less than one-quarter* of Class Counsel's true lodestar plus costs.

32. NYLAG has not attached full fee and cost records but can produce these records to the Court upon request. Resumes for each timekeeper are also available upon the Court's request.

---

[1] NYLAG received a court-ordered award of attorneys' fees in the predecessor to this action, *Burkett v. Houslanger & Associates*, No. 19 Civ. 2285 (LDH)(JO), for work performed in 2018 and 2019. The rates used in this Declaration to calculate NYLAG's lodestar, covering work performed thereafter, are higher than the rates awarded in *Burkett*, because the work was performed later in time, the attorneys are now more senior, and this case was more complex, since *Burkett* was not actively litigated. However, even using the rates awarded in *Burkett*, NYLAG's lodestar for this matter would be more than triple the fee award sought here.

33. Attached as Exhibit A is a proposed Order granting Final Approval of the Settlement and Certification of the Class for settlement purposes.

Dated: September 30, 2022.
New York, New York

_____
Danielle Tarantolo